Argued and submitted May 15, reversed December 20, 1989

In the Matter of the Marriage of

WINNINGSTAD,
*Respondent,*

*and*

WINNINGSTAD,
*Appellant.*

(25992; CA A49998)

784 P2d 101

James N. Esterkin, Portland, argued the cause and filed the brief for appellant.

Michael A. Yates, Portland, argued the cause for respondent. With him on the brief were Jeffrey S. Matthews, Portland, and Gevurtz, Menashe & Hergert, P.C., Portland.

Before Richardson, Presiding Judge, and Joseph, Chief Judge, and Deits, Judge.

JOSEPH, C. J.

## JOSEPH, C. J.

Wife appeals an order terminating her spousal support. On *de novo* review, we reverse.

The marriage was dissolved in 1983. The property settlement agreement was drafted by husband's attorney. Wife signed it without the advice of counsel; it was expressly incorporated in the dissolution judgment, which awarded physical custody of the couple's child to husband and divided the marital property. It also provided that husband would pay $826 per month spousal support for a period of 10 years and that the support obligation would terminate earlier if wife were to remarry or "enter into a relationship with a male substantially similar to a marital relationship." In April, 1987, wife began sharing her house with a man on a basis that included sexual relations. The man's son also lives with them. She keeps her financial affairs separate from the man's, and neither contributes to the other's support. The spousal support payment is her only source of income. The man pays no rent but pays a share of common household utility expenses. Each buys his or her own food, but they have a "community frig." They are not planning to marry. After the relationship had existed for 17 months, husband moved to modify the judgment by terminating spousal support.

Wife assigns as error the conclusion that her living arrangement with the man is substantially similar to a marital relationship and the consequent termination of her spousal support. She claims that the "marital relationship" clause is ambiguous and that, when she entered into the property settlement agreement, she thought that the term meant a "sharing of everything and committing one and another to each other," including sharing financial resources. She asserts that, because she has no long term legal commitment to the man and they do not commingle their financial resources, her living arrangement is not within the term. Husband claims that the term is not ambiguous and has a clear legal meaning[1] and that wife's living situation fits that meaning. He also claims that, because a specific provision of a property settlement

---

[1] Husband asserts that the meaning is the same as "cohabitation." *See Edwards and Edwards,* 73 Or App 272, 278, 698 P2d 542 (1985).

agreement is involved, the substantial change in circumstances rule does not apply and the court is restricted to construing the meaning of the expression.

 Husband is correct that the change of circumstances rule does not apply in this case. *See McDonnal and McDonnal,* 293 Or 772, 652 P2d 1247 (1982). "[W]hen the parties voluntarily enter into a property and support agreement, and the agreement is approved by the court and incorporated into the decree, countervailing principles of public policy prevail and the parties' agreement generally will be given effect." *Edwards and Edwards, supra* n 1, 73 Or App at 276; ORS 107.105(1)(d). Resolution depends on the intent of the parties, as shown by the language of the document or, if ambiguity exists, by extrinsic evidence. *McDonnal and McDonnal, supra, 293 Or at 779-780.*[2]

*In Desler and Desler,* 56 Or App 812, 643 P2d 655 (1982), we held that an agreement that spousal support would terminate at "such time as wife should live with another man" was ambiguous. 56 Or App at 817. In *Edwards and Edwards, supra* n 1, we held that an agreement conditioning termination of spousal support on the former wife's "cohabitation with a member of the opposite sex" is unambiguous, because "cohabitation" has a determinable *legal* meaning. 73 Or App at 277. We conclude that the disputed provision in this case is as ambiguous as the provision in *Desler.*

█ As in *Desler,* the provision here could be interpreted variously to make termination of support contingent on wife's merely cohabiting sexually with another man or cohabiting sexually *and* receiving or giving some amount of financial support or, perhaps, living with a man on the basis of a more or less long term or more or less formal commitment. Husband notes in his brief that the word "similar" has a precise legal meaning and is not ambiguous, *see Transnational Insurance Co. v. Rosenlund,* 261 F Supp 12, 23 (D Or 1966); it means

---

[2] In *Cross and Cross,* 55 Or App 422, 637 P2d 1386 (1981), and *Heathman and Heathman,* 94 Or App 223, 764 P2d 966 (1988), we said that, in interpreting the language of a property settlement agreement incorporated in a dissolution judgment, we try to determine the intent of the judge, not of the parties. With the possible exception of those instances where the trial judge expressed an intention with respect to the matter in issue, we disavow that rule, which directly conflicts with *McDonnal,* a Supreme Court case.

corresponding, resembling in many respects, somewhat like or having a general likeness. However, the term "marital relationship" does not have a judicial or statutory definition, and it is that expression about which the parties differ.

The parties testified about their understandings of the meaning of the expression, and they did not intend the same thing. Both anticipated that the clause could apply if wife were to live with a man in a sexual relationship for a length of time that would indicate that their relationship was exclusive and permanent. However, wife also believed that the living arrangement would have to include some monetary support to or from the man before it could trigger a termination of support. Husband, unsurprisingly, had a broader view of the meaning. Because, in his view, merely living together in the same home would inherently include some sharing of expenses, he testified that he did not specifically contemplate that wife would have to look to the man for financial support or *vice versa.*[3]

■ We cannot resolve the meaning from the words themselves or even solely from the evidence of the parties' intent. The provision is most similar to the one involved in *Desler and Desler, supra,* where we read the language to require proof that the wife and the man had developed at least some degree of financial interdependency before the husband could invoke the termination provision. Despite the sharing of some common expenses and the fact that wife and the man were living in her house, the record does not show that interdependency. Without that showing, we do not believe that the resolution of the ambiguity in the agreement that husband had prepared should, as a matter of policy, go against her. Nothing in the record fairly indicates that wife is merely practicing a subterfuge to avoid the enforcement of the provision while enjoying the benefits of a relationship that is, in fact, substantially similar to a marital relationship. *See Weseman and Weseman,* 51 Or App 675, 626 P2d 942, *rev den* 291 Or 118 (1981).

---

[3] In his testimony, husband related a conversation that he and wife had about the clause before the property settlement agreement was signed. The discussion was very general, particularly with respect to what similarity would involve. That evidence does not controvert that she understood the clause to relate to financial support *inter sese.* Furthermore, husband acknowledged on cross-examination that part of the purpose for the clause was so that he would not have to support wife if she were being supported by another man.

Reversed. No costs to either party.