Argued and submitted October 12, 2001, reversed and remanded with instructions
May 8, 2002

In the Matter of the Marriage of

Marcia Jean NEAL,
*Appellant,*

*and*

Lloyd NEAL,
*Respondent.*

8701-60272; A110603

45 P3d 1011

Elizabeth A. Trainor argued the cause and filed the briefs for appellant.

Charles D. Gazzola argued the cause for respondent. With him on the brief was Gazzola & Hull, P.C.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

ARMSTRONG, J.

**ARMSTRONG, J.**

Wife appeals from a trial court order that determined that her one-third share of husband's pension is based on the pension distribution formula applicable at the time of the parties' dissolution rather than on the formula applicable at the time that husband began to receive his pension benefits. She contends that her share should be based on the later rather than on the earlier distribution formula. We agree with wife and reverse.

The facts are undisputed. The parties were married in June 1972. Shortly thereafter, husband was drafted by the Portland Trail Blazers of the National Basketball Association (NBA). Husband played in the NBA for approximately seven years until his retirement in 1979. In January 1988, an Oregon court dissolved the parties' marriage. At the time of the dissolution, husband was 37 years old and wife was 35 years old.

One of the issues in the dissolution proceeding was whether wife was entitled to any of husband's NBA pension benefits. Wife argued in her trial memorandum that "an appropriate division of the pension plan is to provide for [her] to receive one half of the retirement benefits at the time the retirement benefits are paid." The dissolution court ruled in a letter opinion that wife was entitled to "one-third of the [NBA] pension benefits, when received by [husband]."

Wife's lawyer drafted the dissolution judgment that the court entered. The section pertaining to husband's NBA pension provides in relevant part:

"Wife shall be awarded 33-1/3 percent of that certain pension plan available to Husband through the National Basketball Association pursuant to a Qualified Domestic Relations Order * * *. The court shall retain jurisdiction of this qualified domestic relations order for the purposes of modification or amendment as required by the pension plan administrators. Each party shall sign the appropriate documents to effect the provisions of this qualified domestic relations order."

The issue of wife's share of the pension did not arise again until 2000, when husband contacted the administrator

of the pension plan to inquire about his ability to receive his pension benefits. At that time, husband learned that wife had not prepared a qualified domestic relations order (QDRO) and, hence, that the plan administrator was unaware of wife's entitlement to a share of husband's pension. After husband sent a copy of the dissolution judgment to the plan administrator, the administrator determined that wife's share of the pension plan should be based on the distribution formula in effect at the time of the dissolution (1987 distribution formula) and not on the formula in effect at the time husband was to receive his pension benefits (2000 distribution formula). He sent wife a letter informing her of that decision and notifying her that, "[i]f the Pension Committee does not receive a written request to review this Preliminary Determination within 60 days after the date of this letter, then this Preliminary Determination shall automatically become the final determination."

In response, wife sent a letter to the plan administrator objecting to the formula used to calculate her benefits. Eventually, after consulting with the pension plan's attorney, wife drafted a proposed QDRO that granted wife one-third of husband's pension plan based on the 2000 distribution formula. Wife then filed a motion with the trial court seeking entry of her proposed QDRO.

At the hearing on her motion, wife presented evidence that the increase in pension benefits from the date of the dissolution to the date that husband was entitled to receive his pension had nothing to do with any post-dissolution labor by husband. Instead, the increase was the result of decisions by the NBA to increase husband's benefits based on the labor that he had performed before the parties' dissolution. Wife's attorney testified that, in his discussions with the pension plan's attorney, the plan's attorney indicated that, if the court entered wife's proposed QDRO, the pension plan administrator would consider it to be a valid QDRO and would implement it accordingly. On cross-examination, wife's attorney stated that the plan administrator was also willing to treat the language in the dissolution judgment as a QDRO, and, if the court did not enter wife's proposed QDRO, she would be entitled to her one-third share of husband's pension at the 1987 distribution formula rate.

The trial court concluded that the pension provision of the dissolution judgment was ambiguous. It then applied rules of contract construction to the judgment, and, because wife's attorney had drafted the dissolution judgment, the court construed the ambiguity in the judgment against her. It therefore awarded wife one-third of husband's pension based on the 1987 distribution formula.

On appeal, wife argues that the trial court erred by using rules of contract construction to interpret the parties' dissolution judgment, thereby erroneously awarding her pension benefits based on the 1987 distribution formula. Husband responds that the trial court ruled correctly, based on the language in the dissolution judgment and the interpretation of that language by the pension plan administrator. We agree with wife and reverse.

■ We begin by examining the language of the parties' dissolution judgment to determine whether the provision concerning the division of husband's NBA pension is ambiguous. A provision in a judgment is ambiguous if it is capable of more than one reasonable interpretation. *Blomquist and Blomquist*, 126 Or App 319, 322, 868 P2d 1356 (1994).

■ Husband contends that the "determination of whether an ambiguity exists should be made by the [NBA pension] plan administrator" and, because the "attorney for the plan had no problem applying the language in the [dissolution judgment] to award Wife a benefit," the provision must be unambiguous. Wife counters that the plan administrator recognized that the provision might be ambiguous "when he invited a written request to review the preliminary determination." Neither argument is persuasive.

The simple answer to husband's argument is that the construction of the judgment ultimately presents an issue for the court. Although pension plan administrators and others may have to interpret dissolution judgments and QDROs in order to implement them, when a dispute arises about the meaning of those documents, it is the court's role to resolve that dispute if the issue is properly presented to the court for

resolution. Here, husband would have the plan administrator assume the court's role. By allowing the plan administrator to determine whether an ambiguity exists, the administrator would, in effect, decide for the court *what* the judgment requires. It is our role, not the administrator's, to make that determination. In doing so, we must examine the text of the provision in the context of the dissolution judgment as a whole.

The pension provision provides that "Wife shall be awarded 33-1/3 percent of that certain pension plan available to Husband through the National Basketball Association," but it fails to specify at what time wife's share should be calculated. Nothing else in the judgment sheds light on that question. We conclude that the provision is ambiguous because wife's one-third share reasonably could be based on either the formula in effect at the time of the judgment or that in effect at the time of the distribution.

If a judgment is ambiguous, we may look to extrinsic evidence to resolve the ambiguity. *Bennett v. Bennett*, 208 Or 524, 529, 302 P2d 1019 (1956). If the ambiguity occurs in a dissolution judgment that has incorporated the parties' property settlement agreement, we resolve it by ascertaining the intent of the parties when they entered into the settlement agreement. *McDonnal and McDonnal*, 293 Or 772, 780, 652 P2d 1247 (1982). Here, husband and wife could not agree on how to divide all of their property, including husband's NBA pension, so the decision was the court's, not the parties'. Consequently, we seek the intent of the dissolution court when it made the division. *See Gourley v. Towery*, 82 Or App 32, 35, 727 P2d 144 (1986) ("We have the authority and, perhaps, the obligation to construe an ambiguous judgment in the light of the record to give effect to the trial court's intent.").

The trial court resorted to rules of contract construction to conclude that, because wife had prepared the draft of the original dissolution judgment, the ambiguous pension provision in the judgment should be construed against her. However, as we explained, after the trial court concluded that the pension provision was ambiguous, it then should have examined extrinsic evidence to determine what the dissolution court intended to accomplish when it originally

divided husband's NBA pension. By applying rules of contract construction without first conducting an examination into what the dissolution court meant to accomplish when it divided the pension, the trial court erred.[1]

The dissolution court explained its reasoning in its opinion letter to the parties:

> "In light of [wife's] receipt of more than one-half of the marital estate and her greater income, I am awarding to her one-third of the Blazer pension benefits, *when received by [husband]*. * * * In making this award, I find that [husband] has not rebutted the presumption of equal contribution by [wife], but award her less than half of it due to the reasons set forth here. I believe that *this results in a nearly equal distribution of the assets* of the parties * * *."

(Emphasis added.) The letter establishes that the court's overriding goal was to divide the parties' assets equally. To do that, the court awarded wife one-third, rather than one-half, of husband's NBA pension because she had received a greater portion of the rest of the marital estate. The court also specifically awarded wife one-third of the pension "when received by husband." Viewing that language in light of the dissolution court's express intent to distribute the parties' assets as evenly as possible, it is apparent that the court intended to award wife one-third of whatever pension husband actually received.

Awarding wife one-third of the pension at the 1987 distribution rate would necessarily award husband not only his two-thirds share of the pension at the 2000 distribution rate but also the difference between wife's one-third share at the 1987 and the 2000 distribution rates. That construction of the dissolution judgment would be artificial and contrary to the dissolution court's express intent to divide the assets equally. The pension vested during the parties' marriage, and husband contributed nothing to its increase in value after the parties' dissolution. Nothing suggests to us that the dissolution court intended the dissolution judgment to give wife less than one-third of the pension benefits that husband

---

[1] Because of our resolution of the meaning of the judgment, we do not address whether the rule of contract construction used by the trial court was applicable in this context.

receives for his NBA service. Accordingly, we conclude that the dissolution judgment awarded wife one-third of the benefits that husband actually receives from his NBA pension, which on these facts means one-third of the pension benefits calculated under the 2000 distribution formula.

Reversed and remanded with instructions to enter QDRO awarding wife one-third of the benefits received by husband from his NBA pension.