Argued and submitted December 20, 2004, reversed June 7, petition for review denied September 26, 2006 (341 Or 449)

In the Matter of the Estate of
Dalton Brown, Deceased.

Jennifer BROWN,
Personal Representative of the Estate of
Dalton Brown, Deceased,
*Appellant,*

*v.*

Lois I. BROWN,
Susan Brown, Prudence Diem,
Thomas Brown, and Robin Mulkey,
*Respondents.*

P0103-42; A120468

136 P3d 745

Thomas W. Sondag argued the cause for appellant. With him on the briefs was Lane Powell Spears Lubersky LLP.

Brooks F. Cooper argued the cause for respondents. With him on the brief were Susan A. Miller and James R. Cartwright.

Before Haselton, Presiding Judge, and Brewer, Chief Judge,* and Deits, Judge pro tempore.

BREWER, C. J.

---

* Brewer, C. J., *vice* Ortega, J.

**BREWER, C. J.**

This is an appeal from a judgment awarding petitioners declaratory relief in a probate case against respondent Jennifer Brown, the personal representative of decedent Dalton Brown's estate. The trial court declared that shares of stock in a closely held corporation were not assets of decedent's estate but, rather, were the property of an express trust created in a dissolution judgment for the benefit of petitioners, who are decedent's children and his former spouse, Lois Brown. The trial court ordered respondent to deliver those shares to the trust's trustee, whom petitioners would select. Respondent appeals from that judgment[1] and, on *de novo* review, we reverse. ORS 19.415(3).

On December 15, 1969, Lois and Dalton Brown dissolved their marriage pursuant to a divorce decree entered in Multnomah County Circuit Court. The decree stated, in part:

"THIS MATTER having come on regularly for trial on the 25th day of November, 1969, before the undersigned Judge of the above entitled Court * * *.

"[Lois Brown] was sworn and testified for and on behalf of her Amended Complaint and thereafter rested. [Decedent] was sworn, but did not offer any evidence in his behalf, and the matter was then submitted to the Court for final determination and approval of the Property Settlement Agreement between the parties, and the Court being fully advised in the premises;

"NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

"* * * * *

"19. The stock owned by [Lois Brown] and [decedent] or [decedent] said stock of the Marley Brown Lumber Co. be placed in trust as follows:

"A. All of the said stock shall go to the United States National Bank of Oregon as Trustee for the benefit of the

---

[1] Petitioners' amended petition named both the personal representative, Jennifer Brown, and Marley Brown Lumber Service Co. as respondents. The trial court later bifurcated the proceedings against each respondent and, therefore, the judgment in this case, entered under ORCP 67 B, pertains only to the claim against the personal representative.

children. Said stock shall remain with the said Trustee for so long as both [Lois Brown] and [decedent] are living.

"B. [Decedent] is awarded the voting rights of said stock, and in the event of a dividen[d] or earnings from the proceeds of sale of the stock, [decedent] shall be entitled thereto to the exclusion of [Lois Brown] or the minor children herein.

"C. [Decedent] shall continue to maintain, 'Buy and Sell' insurance coverage so that in the event of [his] death, said Trustee will be paid the sum equal to the amount provided for in the Buy and Sell Agreement.

"D. In the event of [decedent's] death, and if [Lois Brown] is unmarried, then [Lois Brown] shall be entitled to alimony as above set forth from the principal of the trust.

"E. In the event that it becomes necessary for [Lois Brown] to require extraordinary expenses, then in that event, and if [she] is still single, said extraordinary expenses to be in addition to the alimony hereto provided for, and said extraordinary expenses to come from the principal of said trust.

"F. [Lois Brown] shall be entitled to the sum of Two Hundred Fifty ($250.00) Dollars per month commencing at age sixty, in the event that she is unmarried, and shall in addition thereto be entitled to extraordinary expenses that might be incurred.

"20. A copy of the Trust Agreement shall be made a part of this Decree, attached hereto and enforceable as a part of the Decree."

When the decree was entered, no trust agreement was attached to it. Nor was there any evidence that a separate trust agreement was ever executed. Soon after the decree was entered, decedent consulted with a representative of the United States National Bank of Oregon regarding the trust, but the bank representative informed him that the bank could not be the trustee of any such trust. Decedent did nothing further with regard to establishing the trust or designating a trustee.

The disputed shares of stock were held in Marley Brown Lumber Service Co. (MBLS), a closely held family lumber business. On December 17, 1969, two days after the

decree was entered, decedent entered into a stock purchase agreement (SPA) with the other shareholders and with MBLS. The SPA provided that, upon decedent's death, the corporation would repurchase his shares. The purchase price for each share was to be its pro rata proportion of the net fair market value of the corporation's assets. The agreement further provided that the corporation would maintain life insurance on each of the shareholders and that, on the death of any shareholder, the corporation would apply the insurance proceeds toward the purchase price of the deceased shareholder's shares. Any portion of the purchase price that exceeded available life insurance proceeds was to be paid in future installments by MBLS. The agreement also permitted a shareholder to sell his shares but gave the corporation the right of first refusal with regard to any sale. Over a period of several years after the divorce decree was entered, decedent sold some of his shares back to the corporation.

Decedent died in March 2001, and, pursuant to his will, respondent (decedent's second wife, from whom he was also divorced) was appointed personal representative of decedent's estate. Among the provisions of his will, decedent included the following devise:

"7.2   I currently own shares in Marley Brown Lumber Service, an Oregon corporation, which are subject to [a] stock purchase agreement. I hereby give and devise the proceeds from the redemption or purchase of my share ownership as follows:

"7.2.1   I give the value of my share ownership as of December 31, 1969 to my four (4) children with a share by right of representation for any surviving children of a deceased child of mine. If a child of mine is not survived by children, his or her share shall pass to my remaining children in equal shares. This gift is meant to comply with the provisions of my Decree of Divorce dated December 15, 1969 and matches the intent of the parties at the time of the execution of the Decree of Divorce.

"7.2.2   I give the balance of the proceeds to [respondent] with a share by right of representation for any surviving children of [respondent] in the event she does not survive me."

In their amended petition for declaratory judgment, petitioners relied on paragraphs 19 and 20 of the divorce decree and alleged that those provisions had the following effects:

"4.

"Lois I. Brown and [decedent] had agreed and contemplated that [decedent] would thereafter contact United States National Bank of Oregon for the purpose of memorializing the terms of the trust to which they had agreed, obtaining the consent of United States National Bank of Oregon to serve as trustee, and placing the above-referenced shares of stock in trust in accordance with the terms of the Decree.

"5.

"[Decedent] subsequently contacted United States National Bank of Oregon, which then declined to serve as trustee. Thereafter, [decedent] failed to memorialize the terms of the trust to which he and Lois I. Brown had agreed, failed to obtain the consent [of] United States National Bank of Oregon or any other corporate fiduciary to serve as trustee, failed to place the above-referenced shares of stock in trust in accordance with the terms of the Decree, and failed to notify, advise, or inform Lois I. Brown that he had not taken those actions. * * *

"* * * * *

"9.

"Petitioners contend that 173 shares of stock in Marley Brown Lumber Service Co. are subject to the terms of paragraphs 19 and 20 [of] the Decree; that these shares of stock should be placed in trust for the benefit of [petitioners] pursuant to paragraphs 19 and 20 of the Decree; and, that [respondent], in her capacity as personal representative, presently holds these shares of stock in constructive trust for the benefit of petitioners pursuant to paragraphs 19 and 20 of the Decree. * * *

"10.

"Respondent Marley Brown Lumber Service Co. contends that it purchased a total of 83 shares of stock from [decedent] in a series of transactions between 1989 and 2000. Petitioners contend that any attempt by [decedent] to

redeem shares after November 26, 1969 was null and void and without any effect whatsoever because he was no longer the equitable or beneficial owner of the shares but instead held those shares in constructive trust for petitioners pursuant to paragraphs 19 and 20 of the Decree."

Petitioners also alleged that, in October 2000, Lois Brown discovered that decedent "had not taken the actions referenced [in the divorce decree regarding the trust.]" Petitioners further alleged that decedent refused to take the actions "required of him in accordance with the Decree." In the prayer of the amended petition, petitioners asked the court to declare that respondent held the shares of stock "in constructive trust for the benefit of [petitioners.]"

Decedent's sworn statement was taken before his death to perpetuate his testimony. In his statement, decedent testified that he understood that he retained the right to sell his shares of MBLS stock during his lifetime and that, under the decree, the children were only entitled to receive the value of the shares at the time the decree was entered. According to decedent, that value was $90,000, the same amount as the life insurance proceeds available under the SPA for the repurchase of his stock by the corporation on his death. Lois Brown, on the other hand, testified that she understood that "dividends" would be paid to decedent during his lifetime, but that they "didn't talk about the sale of stock." She testified that she thought she would continue to receive spousal support after decedent died, and the children would get what was left after they both died. Thus, the issue before the trial court was whether all of decedent's shares were to be held in trust for the benefit of petitioners or whether petitioners were only entitled to receive the value of the shares equal to the insurance proceeds available under the SPA, that is, the value of the shares at the time the decree was entered.

After a bench trial, the trial court concluded that it lacked authority to impose a constructive trust on decedent's shares. The court nevertheless concluded that the divorce decree had created an express trust, declared that all the shares of stock were the property of the trust, and ordered

respondent to deliver those shares to the petitioners' proposed trustee.

In separate "findings of fact and conclusions of law" that were incorporated into the judgment, the trial court gave the following explanation, in part, for its decision:

"It is clear that the parties intended to establish a trust, with an independent trustee to hold the shares of MBLSC formerly owned by the Decedent. The Decree was certainly 'bare bones' so far as the terms of the trust. However, that is not fatal if the essential provisions of the trust are set forth."

The court further explained:

"Before dealing with the defenses raised by [respondent], I will set forth some additional issues:

"1. Does the fact that the stock of MBSLC, owned by the Decedent prior to the divorce, remained registered in his name and that [ ] he retained the certificates invalidate the trust. * * * [T]ransfer of title to a trustee for the benefit of the trust of an identifiable res is the event that brings a trust into existence. That is, to be a valid trust, there must be an actual conveyance or transfer of property. However, it is then stated that the owner may create a trust for the benefit of a third person without a change of possession of such property.

"I find that under the circumstances of this case, the fact that the Decedent failed to transfer the MBSLC stock to the trustee is not fatal to the establishment of a valid trust.

"2. Although a trustee was named, the bank never accepted the trust and there was no trustee actually in place for almost 33 years. This situation would usually be fatal to the establishment of a valid trust. However, the trust intended to be established under the Decree was unusual, in that there was very little for the trustee to do except hold the naked legal title to the shares. The Decedent was always entitled to vote the shares and to receive any dividends that were declared. Had the bank held the shares, it would have been impossible for the Decedent to wrongfully submit the 25 shares for redemption. However, [petitioners] are the only ones hurt by that wrongful redemption.

"Under the circumstances of the trust established under the terms of the Decree, the fact that the bank did not accept the trust and there was no trustee in place did not invalidate the trust. The office of trustee was established. It was not filled but no one was harmed by such failure, except [petitioners.] * * * *In re Buelow's Estate,* 177 Or 218, 161 P2d 909 (1945), had issues remotely akin to the present case, without the long expanse of time. The Court said at page 232, 'A trust may be created although no trustee is named in the will, *for equity will not permit a trust to fail for want of a trustee*[.]'

"3.  As indicated in the recital of facts, neither a separate property settlement nor trust agreement were prepared. The Decree is the only document which we have. As skimpy as it is, I find that the meaning is sufficiently clear as to what the Decedent and Lois intended and what Judge Lewis approved. In their amended petition, the Petitioners refer to the imposition of a constructive trust. There may be elements of a constructive trust in the remedy they seek, but I think the use of the term is unfortunate. A constructive trust is usually established or imposed as a result of fraud. It is not a technical trust but an implied trust arising by operation of law, usually as a result of the fraudulent or other improper conduct on the part of someone. * * * If a trust was established in 1969, it was an express trust, not a constructive trust. The establishment of a trust did not depend upon the misconduct of anybody but rather the agreement of the Decedent and Lois confirmed by Judge Lewis. Elements of a constructive trust may be present with respect to the inventorying of the shares of MBLSC by [respondent,] after having knowledge of the Decree."

(Emphasis by trial court.)

■     On appeal, respondent assigns error to the trial court's conclusion that the divorce decree created an express trust. That theory, respondent argues, was never raised before the trial court, and therefore, based on this court's decision in *Hurlbutt v. Hurlbutt,* 36 Or App 721, 725, 585 P2d 724 (1978), *rev den,* 285 Or 73 (1979), the trial court lacked authority to rely on it in deciding the case. Petitioners disagree, arguing that, because this is an equitable proceeding in a probate case wherein they sought declaratory relief, there

were no formal pleading requirements, and, at most, "petitioners were only required to plead facts which would demonstrate the existence of a justiciable controversy." Petitioners assert that their pleadings fairly raised the only issue that the trial court needed to resolve, that is, the ownership and control of decedent's stock, and "[t]he trial court's discussion regarding an express trust is purely dicta and not necessary for the resolution of the case." Petitioners appear to argue that, based on the facts pleaded in their declaratory judgment claim, the trial court had the authority to decide the case on any number of theories, including the express trust theory that the court adopted, a theory based on contract rights with a constructive trust remedy, or any other theory that might fit the facts.

■■ Petitioners are correct that a complaint for a declaratory judgment is "legally sufficient if it sets forth facts showing the existence of an actual controversy relating to legal rights and duties of the respective parties." *Hupp v. Schumacher*, 29 Or App 9, 12-13, 562 P2d 217 (1977). That proposition did not, however, confer unlimited authority on the trial court to enter a judgment on a theory of relief that petitioners failed to plead. In *Hurlbutt*, also a declaratory relief case, we faced a similar problem. The plaintiff there asked the trial court to declare that she was the beneficiary of a resulting trust in a one-half interest of certain real property. The court imposed a constructive trust on the property. On appeal, we reversed:

> "The trial court was in error in *sua sponte* opting for a constructive trust theory which was not pled. In law or equity, a decree or judgment must be responsive to the issues framed by the pleadings and a trial court has no authority to render a decision on issues not presented for determination. In absence of amendment of the pleadings, evidence received without objection will not provide a basis for such a decree. The trial court's findings herein which are outside the issues tendered are a nullity."

36 Or App at 725 (citations omitted). *See also Heintz v. Sinner et ux*, 232 Or 529, 533, 376 P2d 478 (1962) (holding that, in a declaratory judgment proceeding, "the court cannot award relief outside the issues of the case"); *Central Oregon Fabricators, Inc. v. Hudspeth*, 159 Or App 391, 403, 977 P2d

416, *rev den*, 329 Or 10 (1999) (concluding that the trial court lacked authority to render a decision on issues not presented for determination). In short, in a proceeding for declaratory relief, the claimant's pleading must allege a cognizable theory of relief, which if proved, would support the declaration sought.[2] We therefore turn to the issue whether petitioners adequately pleaded their entitlement to a declaratory judgment based on the express trust theory that the trial court adopted.

■       An express trust is created when a grantor or trustor presently divests himself or herself of full legal and equitable ownership in property, with legal title held by a trustee and equitable ownership resting in a beneficiary. *Windle, Adm'x et al. v. Flinn et al.*, 196 Or 654, 676, 251 P2d 136 (1952). In *Winters et al. v. Winters et al.*, 165 Or 659, 665-66, 109 P2d 857 (1941), the court explained:

> "[I]n order to create a trust, there must be a manifestation of an intent on the part of the trustor that a trust be created.
>
> "* * * * *
>
> " 'The act or acts of the settlor manifesting his intention to create a trust are usually either the speaking or writing of words, coupled with acts affecting the title and possession of the res.' * * *. 1 Bogert, Trusts and Trustees, § 45 pp 196, 197."

*See also Allen v. Hendrick*, 104 Or 202, 223, 206 P 733 (1922) ("[A] voluntary trust must so operate as presently to transfer an interest in the thing."). Petitioners did not allege that the provisions of the divorce decree manifested decedent's intent to presently create a trust, nor did they assert that decedent acted in such a way as to divest himself of the title to the property and to transfer it to another. Petitioners merely set out certain provisions of the decree and requested that the

---

[2] Petitioners argue that we should treat a declaratory judgment proceeding in a probate case as somehow different from an independent action for declaratory judgment. They rely on ORS 111.205, which provides, in part, that "[n]o particular pleadings or forms thereof are required in the exercise of jurisdiction of probate courts." ORS 111.205, however, pertains to the jurisdictional authority of the probate court and is not germane to the issue whether a trial court has authority to render a judgment on a theory not presented to it. Petitioners provide no other support for their argument, and we reject it without further discussion.

court impose a constructive trust. In short, petitioners did not plead a claim for breach of an express trust. Nor did petitioners otherwise raise the issue before the trial court or seek to amend their pleadings to state such a claim. Accordingly, the trial court erred in deciding the case on that theory.

■ We next consider whether petitioners properly pleaded a cognizable claim for relief that we can conclude, on *de novo* review, that they proved.[3] In making that determination, we construe petitioners' pleadings liberally to determine whether they have adequately alleged a cognizable claim for relief. *See* ORCP 12. *See also Hupp v. Schumacher*, 29 Or App 9, 13, 562 P2d 217 (1977) (declaratory judgment pleadings are to be liberally construed). Here, petitioners alleged, in effect, that the trust provisions of the divorce decree required decedent to contact United States National Bank of Oregon to memorialize the terms of the trust to which they had agreed, that he would obtain the bank's consent to serve as trustee, and that he would place the shares of stock in trust in accordance with the terms of the decree. Petitioners further alleged that decedent failed to perform those obligations. As a consequence, petitioners asserted, respondent holds decedent's shares in constructive trust for the benefit of petitioners.

Respondent understands the amended petition to assert a substantive claim for a constructive trust, rather than to seek a constructive trust as a remedy for the violation of an independent substantive right. According to respondent, petitioners cannot prevail on such a claim because they have not challenged the trial court's conclusion that they failed to prove its elements. Petitioners counter that their use of the term "constructive trust" referred to the equitable remedy available to the court to enforce the property settlement agreement between petitioner and decedent, not a substantive claim for relief.

■ Respondent relies on *Hollen v. Fitzwater*, 125 Or App 288, 865 P2d 1298 (1993), *rev den*, 319 Or 80 (1994). In

---

[3] In *Hurlbutt*, after concluding that the trial court improperly imposed a constructive trust, we said that on *de novo* review, "we may properly consider the evidence to determine if it supports any properly pleaded cause which survived in the trial court[.]" 36 Or App at 725.

*Hollen*, after surveying pertinent case law, we described the elements required to impose a constructive trust as follows: "(1) the existence of a confidential or fiduciary relationship; (2) a violation of a duty imposed by that relationship; and (3) failure to impose the constructive trust would result in unjust enrichment." *Id.* at 292 (citations omitted). We did not, however, conclude that those elements combined to constitute an independent *substantive* claim for relief. To the contrary, Oregon courts impose constructive trusts as remedial devices to avoid unjust enrichment when no other adequate remedy is available. As the Supreme Court stated in *Barnes v. Eastern & Western Lbr. Co.*, 205 Or 553, 594-96, 287 P2d 929 (1955):

> "A constructive trust is merely a procedural device to which the courts resort in order to effect restitution of property in specie. It is not a part of the substantive law. Its place is in the law of remedies. Through the employment of the device, unjust enrichment is prevented. * * *
>
> "* * * * *
>
> "A constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it."

(Internal quotation marks omitted.) *See also Sheldon v. Sheldon*, 163 Or App 256, 266, 987 P2d 1229 (1999) ("A constructive trust will be imposed by a court against one who by wrongful conduct has obtained or holds legal right to property which he ought not to enjoy in good conscience and equity."); *McDonald v. McDonald*, 57 Or App 6, 9, 643 P2d 1280, *rev den*, 293 Or 373 (1982) ("A constructive trust may be imposed only when the putative trustee holds property which rightfully belongs to another and is thereby unjustly enriched."). In short, the "elements" required to impose the remedy of a constructive trust, that is, the existence of a confidential or fiduciary relationship, a violation of a duty imposed by that relationship, and unjust enrichment, demonstrate the need to separately establish the existence of a particular species of substantive right that has been violated under circumstances that justify the imposition of an exceptional equitable remedy.

In their pleading, petitioners sought imposition of a constructive trust on shares of stock that they asserted rightfully belonged to them under the property settlement agreement embodied in the divorce decree.[4] In so doing, petitioners pleaded the violation of contract rights that, if proved, would entitle them to a declaratory judgment and, potentially, the imposition of a constructive trust. *See Catching v. Lashway*, 84 Or App 602, 606, 735 P2d 13 (1987) (constructive trust is appropriate remedy for tracing assets dissipated when a party breached a contract to make a will).

■■ Before considering whether petitioners proved their claim, we address the applicable burden of proof. As discussed, petitioners' action is styled as one for a declaratory judgment, but that title does not determine the gravamen of the underlying claim. The underlying claim is for a declaration of contract rights that will, if proved, result in the imposition of the remedy of a constructive trust. Proof of the conduct necessary to impose a constructive trust must be "by strong, clear and convincing evidence." *Albino v. Albino*, 279 Or 537, 550, 568 P2d 1344 (1977). " 'Clear and convincing evidence means that the truth of the facts asserted is highly probable.' " *Id.* (quoting *Supove v. Densmoor et ux*, 225 Or 365, 372, 358 P2d 510 (1961)). The evidence must be of "extraordinary persuasiveness." *Pantano v. Obbiso*, 283 Or 83, 87, 580 P2d 1026 (1978) (quoting *Hughes v. Helzer*, 182 Or 205, 224, 185 P2d 537 (1947)). Where, as here, a declaratory judgment would impose the remedy of a constructive trust, the burden of proof is the one applicable to that remedy. *See Cox v. Henderson*, 90 Or App 6, 10, 751 P2d 225 (1988).

Respondent does not assert on appeal that petitioners failed to prove the existence of a confidential or fiduciary relationship between Lois Brown and decedent. Accordingly, we do not address the sufficiency of the evidence with respect

---

[4] A probate court has the authority to declare the rights of parties under a contract. *See* ORS 111.095(2) (probate court has "full, legal and equitable powers to make declaratory judgments, as provided in ORS 28.010 to 28.160 * * *"); ORS 28.020 ("[a]ny person interested under a deed, will, written contract or other writing constituting a contract * * * may have determined any question of construction or validity arising under any such instrument * * *").

to that issue.[5] Rather, as does respondent, we focus on whether petitioners proved by clear and convincing evidence that decedent violated a contractual duty toward petitioners.

In that regard, respondent argues that, although petitioner and decedent reached an agreement "of some sort," the evidence did not show that they agreed to the terms that petitioners advance. Petitioners, on the other hand, assert that the divorce decree memorialized their version of the parties' agreement and that decedent violated the agreement by failing to place the MBLS shares in trust for petitioners. We frame the dispositive issue as whether petitioners established, by clear and convincing evidence, that decedent violated a duty under the terms of the settlement agreement to place the MBLS shares in trust for the benefit of petitioners so that respondent now "holds legal right to property which [s]he ought not to enjoy in good conscience and equity."[6] *Sheldon*, 163 Or App at 266.

■    Of course, the divorce decree did not merely document a property settlement agreement; it also was a judgment. *Neal and Neal*, 181 Or App 361, 45 P3d 1011 (2002).[7]

---

[5] Respondent asserted in her trial memorandum that petitioners could not establish the existence of such a relationship and, although it is not entirely clear from its written decision, the trial court may have agreed with that argument. The difficulty is that respondent does not renew that argument on appeal. It is respondent's obligation to establish that the trial court erred in entering judgment for petitioners. In meeting that obligation, respondent is required to demonstrate why we should conclude on *de novo* review that petitioners did not prove the claim that they advanced at trial. In that regard, we will address only those alleged deficiencies that respondent has identified on appeal.

[6] The issue here is not whether decedent violated the settlement agreement by reselling some of his stock to the corporation during his lifetime. That issue is the subject of the unresolved dispute between the corporation and petitioners.

[7] In this case, the divorce decree specifically approved the parties' property settlement agreement. We reject without extended discussion respondent's argument that, because the settlement agreement was embodied in a judgment, it expired when it was not renewed within 10 years of entry. *See former* ORS 18.360(1), *repealed by* Or Laws 2003, ch 576, § 580 (similar provision now found in ORS 18.180(7), *enacted by* Or Laws 2003, ch 576, § 18). Respondent relies on the Supreme Court's decision in *Webber v. Olsen*, 330 Or 189, 998 P2d 666 (2000), in which the court declined to separately enforce as a contract an agreement embodied in a stipulated judgment of dissolution. However, the legislature enacted ORS 107.104 in 2001 to overturn *Webber*. *See Grossman and Grossman*, 338 Or 99, 107 n 4, 106 P3d 618 (2005) (so stating). ORS 107.104(1)(a) announced a state policy of encouraging settlement of dissolution and similar cases. ORS 107.104(1)(b) and (2)

However, if a dissolution judgment has incorporated the parties' property settlement agreement, we determine its meaning by ascertaining the intent of the parties when they entered into the settlement agreement. *Id.*; *McDonnal and McDonnal,* 293 Or 772, 780, 652 P2d 1247 (1982).

■ Oregon subscribes to the objective theory of contracts. *Kabil Developments Corp. v. Mignot,* 279 Or 151, 156, 566 P2d 505 (1977). In ascertaining the terms of a contract, we examine the parties' objective manifestations of intent, as evidenced by their communications and acts. *Id.* at 157-58. We follow the analysis described in *Yogman v. Parrott,* 325 Or 358, 361, 937 P2d 1019 (1997), the first step of which is to examine the text of disputed provisions in the context of the document as a whole. If the text's meaning is unambiguous, we decide the provisions' meaning as a matter of law. *Id.* Alternatively, if the provisions are ambiguous—that is, if they have no definite meaning or are capable of more than one sensible and reasonable interpretation in the context of the agreement as a whole—we examine extrinsic evidence of the parties' intent. *Id.* at 363-64; *Quality Contractors, Inc. v. Jacobsen,* 139 Or App 366, 370-71, 911 P2d 1268, *rev den,* 323 Or 691 (1996). Where provisions of a contract are mutually inconsistent, the contract is ambiguous as to the subject matter of those provisions. *See Miller v. Miller,* 276 Or 639, 647, 555 P2d 1246 (1976) (holding that, where the recital clause of a contract is inconsistent with an operative provision of the contract, the contract as a whole is ambiguous); *see also Timber Access Ind. v. U. S. Plywood,* 263 Or 509, 514, 503 P2d 482 (1972) ("Because the provisions of the two paragraphs are inconsistent, the contract is ambiguous."). Finally, if the meaning of disputed contractual provisions remains unclear after those first two steps, we may resolve the contract's meaning by resort to applicable maxims of construction. *Yogman,* 325 Or at 364-65.

We begin by considering the effect of the undisputed fact that, by its terms, the decree contemplated the existence of a separate trust agreement, and there is no evidence that

specifically authorize courts to enforce as contract terms the terms of judgments, including stipulated judgments signed by the parties and judgments incorporating marital settlement agreements. ORS 107.104 applies to decrees entered into both before and after its effective date. Or Laws 2001, ch 203, § 3.

such an agreement was ever executed. In *Wagner v. Rainier Mfg. Co.*, 230 Or 531, 540, 371 P2d 74 (1962) (quoting *Rosenfeld v. United States Trust Co.*, 290 Mass 210, 216, 195 NE 323 (1935)), the Supreme Court said:

> " 'If all the material terms which are to be incorporated into a future writing have been agreed upon, it may be inferred that the writing to be drafted and delivered is a mere memorial of the contract, which is already final by the earlier mutual assent of the parties to those terms.' "

Here, however, there is no evidence that decedent and a trustee mutually agreed to terms that were to be later memorialized in a separate document. Thus, we examine the only writing available—the decree itself—to determine the parties' intent.

The preface to paragraph 19 of the decree provided that "[t]he stock owned by [Lois Brown] and [decedent] or [decedent] said stock of the Marley Brown Lumber Co. be placed in trust as follows[.]" Paragraph 19 A provided that "[a]ll of the said stock shall go to the United States National Bank of Oregon as Trustee for the benefit of the children. Said stock shall remain with the said Trustee for so long as both [Lois Brown] and [decedent] are living." If there were no other evidence in the record, we would have little difficulty concluding that that portion of the agreement established petitioners' rights to the shares held in decedent's estate. However, there is more.

In support of decedent's understanding of the agreement, respondent relies on several provisions of paragraph 19 of the decree. First, respondent relies on paragraph 19 B. As discussed, that provision awarded decedent voting rights on the stock, the right to receive dividends, and, what is most important, "earnings from the proceeds of sale of the stock." The latter phrase could refer to interest or income earned on the proceeds from the sale of decedent's stock, but that is not its only plausible interpretation. It also could refer to the increase in value of the stock, that is, appreciation realized upon sale of the stock. In any event, the provision of paragraph 19 B that contemplates the sale of decedent's shares and his keeping the "earnings" is inconsistent with the provision in paragraph 19 A that "[a]ll of the said stock shall go

to the United States National Bank of Oregon as Trustee for the benefit of the children. Said stock shall remain with the said Trustee for so long as both [Lois Brown] and [decedent] are living."

Another provision of the decree, paragraph 19 C, also is important to the analysis. Paragraph 19 C provided that "[decedent] shall continue to maintain, 'Buy and Sell' insurance coverage so that in the event of [his] death, said Trustee will be paid the sum equal to the amount provided for in the Buy and Sell Agreement." Although it is not entirely clear, it is logical to infer that, even though the SPA was executed two days after the divorce decree was entered, the SPA was "the buy and sell agreement" referred to in paragraph 19 C. Although Lois Brown was unfamiliar with the SPA, there was no evidence of any other "buy and sell" agreement to which the decree plausibly could have referred.

Equally important, though, paragraph 19 C provided that, on decedent's death, the trustee would be paid "the sum equal to the amount provided for in the Buy and Sell Agreement." The repurchase price under the SPA was to be the fair market value of decedent's shares, and the agreement contemplated that, regardless of the available insurance proceeds, decedent was entitled to receive that amount. Thus, one plausible interpretation of the phrase "amount provided for in the Buy and Sell agreement" is that it referred to the repurchase price, not the insurance proceeds.

However, under the SPA, decedent's estate was entitled to receive the proceeds of any insurance policies that the corporation owned on his life in payment of the repurchase price for his stock. Any portion of the price that exceeded available life insurance proceeds was to be paid in future installments. Thus, maintaining the life insurance arguably would be sufficient, in the words of paragraph 19 C, "so that in the event of [decedent's] death," the trustee would receive the "amount" of life insurance "provided in" the SPA.[8] Accordingly, it is also plausible to infer that, under paragraph 19 C, "the sum equal to the amount provided for in the Buy and

---

[8] As discussed, section 7.2.1 of decedent's will, quoted above, conforms to decedent's understanding of paragraph 19 C.

Sell Agreement" was the amount of insurance proceeds, not the entire repurchase price, which would include any post-dissolution increase in value of the stock. That inference is consistent with the principle that a dissolution judgment ordinarily values property at the time of dissolution.[9]

The parties do not suggest the existence of, and we have not identified, any textual maxims of construction that plausibly reconcile the conflicting provisions of paragraphs 19 A and 19 B; therefore, they result in an ambiguity. *See Miller*, 276 Or at 647. Paragraph 19 C further compounds that ambiguity. We thus consider the pertinent extrinsic evidence in the record. Decedent testified in his sworn statement that he believed that the agreement permitted him to resell any of his shares to the corporation during his lifetime and that he was entitled to keep for himself any proceeds, that is, "earnings," in excess of the value of his shares at the time the decree was entered. That understanding is inconsistent with the express language of paragraph 19 A. However, Lois Brown testified that paragraph 19 B did not accurately reflect the parties' intent, in that the parties did not discuss the possibility that decedent's stock could be sold at all. Again, that understanding is inconsistent with the express language of paragraph 19 B. In addition, decedent apparently understood that the provision in paragraph 19 C that, on his death, the trustee would be paid "the sum equal to the amount provided for in the Buy and Sell Agreement," referred to the amount of the insurance coverage on his life under the SPA. According to decedent, that amount—$90,000—was the value of his stock in 1969. By contrast, Lois Brown testified that she did not know any details pertaining to paragraph 19 C, except that the corporation had "buy and sell insurance." The parties' testimony, thus, merely reinforced the ambiguities that we have discerned; it did not resolve them.

Respondent argues that, at the third level of contract construction, the decree should be construed against petitioners, because Lois Brown's attorney drafted it. *See Yogman*, 325 Or at 364 (describing template for resorting to

---

[9] That principle was as well settled in 1969 as it is today. *See, e.g., McBride v. Fitzpatrick et al*, 224 Or 457, 462, 356 P2d 947 (1960).

appropriate maxims of contractual construction). Petitioners reply that both parties were represented by counsel and that each attorney had a hand in the preparation of the decree. Because the record supports that assertion, the maxim does not assist us. Nor have we or the parties identified any other pertinent maxim that resolves the uncertain meaning of the decree.

If this were an ordinary action involving contract construction, it would be necessary, in spite of the uncertain meaning of the decree, to arrive at a specific construction. *Id.* Here, however, the particular relief that petitioners seek—a constructive trust—imposed on them the burden of proving by clear and convincing evidence that decedent violated a duty under the decree. On *de novo* review, we conclude that petitioners have not met the burden of proving, by clear and convincing evidence, that respondent holds property that rightfully belongs to them under the terms of the decree. It follows that petitioners are not entitled to the declaratory relief and constructive trust that they sought against respondent.[10]

Reversed.

---

[10] Our disposition makes it unnecessary to address respondent's argument that petitioners' claim is barred by laches.