Argued and submitted August 13, 2014, reversed June 3, 2015

In the Matter of the Marriage of

John M. GRAM,
Trustee of the Gram Family Trust,
*Petitioner-Appellant,*
*and*

Linda GRAM,
nka Linda Rhyme,
Trustee of the Gram Family Trust,
*Respondent-Respondent.*

Josephine County Circuit Court
05DR0552; A150724

351 P3d 771

Clayton C. Patrick argued the cause and filed the briefs for appellant.

Michael C. Petersen argued the cause for respondent. With him on the brief was Heltzel, Williams, Yandell, Roth, Smith, Petersen & Lush, P.C.

Before Garrett, Presiding Judge, and Ortega, Judge, and DeVore, Judge.*

GARRETT, P. J.

---

* Ortega, J., *vice* Haselton, C. J.

## GARRETT, P. J.

This case involves a dispute over the meaning of a judgment that terminated the parties' marriage and divided the marital assets. Several years after the trial court entered that judgment, wife filed a motion to clarify the judgment. After conducting a hearing, the trial court entered a supplemental judgment. Husband now appeals, arguing that the supplemental judgment modified the property division in the original judgment, which the trial court lacked the authority to do. Husband also argues that the court erred when it (1) refused to admit certain exhibits offered by husband and (2) made findings that were unsupported by any facts on the record. As explained below, we agree that the supplemental judgment impermissibly modified the property division in the original judgment. That conclusion obviates our need to address husband's other arguments. We, therefore, reverse.

The relevant facts are undisputed. The parties' marriage was terminated in 2007. A principal issue at the termination trial was the amount and duration of compensatory and maintenance support to be paid by husband to wife. The trial court entered a judgment that addressed those issues, as well as the division of the marital assets. The only aspects of that judgment that are relevant to this case are those that address the parties' marital residence. The judgment stipulates that that residence "shall be sold as soon as possible, and the funds shall be distributed in a manner consistent with the terms of this paragraph." The judgment also provides that "[t]he court shall retain jurisdiction over the residence and the funds received from the sale until the terms of the judgment relating to the sale and distribution of funds have been performed as indicated."

The 2007 judgment also specified the manner in which the marital residence was to be prepared for sale and how the proceeds were to be distributed. As those provisions are important to our discussion, we quote them here:

"2.4.1 The parties will select a real estate sales agent and will immediately list the property for sale. Each party will sign the listing agreement. The property will remain continuously listed for sale until it sells. The parties are obligated only to sell the property for cash and may not,

unless by mutual agreement, be required to accept a land sale contract, second mortgage or some other non cash purchase offer.

"2.4.2 Husband will have, beginning sixty (60) days after the date this judgment is entered, exclusive right to use and occupy the property as caretaker until it is sold.

"2.4.3 Husband shall pay mortgage (principal and interest), fire and casualty loss insurance as they become due.

"2.4.4 Husband shall be responsible for all repairs to the property. 'Repairs' are defined as money expended for ordinary and routine services necessary to keep the property in a state of marketability.

"2.4.5 Husband shall cooperate fully with all real estate sales agents in showing the property to prospective buyers and to any real estate sales agents who might want to familiarize themselves with it. Husband shall at all times maintain the property in a clean and orderly manner so as to make it as attractive to potential buyers as is possible through ordinary care.

"2.4.6 If either party incurs any expenses or makes any payment related to the property because the other party did not pay an expense or payment in accordance with this judgment, the paying party will be reimbursed the amount paid, plus interest, from the nonpaying party's portion of the sale proceeds. The repayment will be made at the time of closing. Interest will accrue on the sum paid at the rate of 9% from the time it was spent until it was repaid.

"2.4.7 Wife shall vacate the residence, and remove all of her personal property from the residence, including the inventory from her in-home sales business, no later than sixty (60) days after the date this judgment is entered.

"2.4.8 Husband shall make the mortgage payments while Wife occupies the residence. If Wife fails to vacate the residence within sixty days from the date of the judgment, Husband may deduct the amount of the mortgage payments from his spousal support payment for each month, or part of a month, that Wife occupies the residence."

The judgment also provides that certain expenses "shall be deducted from the proceeds that result from the

sale of the residence before the proceeds are distributed to the parties." Of importance here, those expenses include certain debts incurred by both husband and wife, "any real estate commissions," "[p]ost trial expenses for repairs made by Husband to the marital residence," and "[p]ost trial mortgage payments made by Husband[.]"

Wife vacated the residence within 60 days and husband regained possession. Husband then began to make the required repairs. The parties listed the house, but it failed to sell. At some point, the house was taken off the market. In August 2010, the parties discussed the option of refinancing the mortgage instead of selling the home immediately. In the following months, however, negotiations broke down over the issue of the deduction of the mortgage payments made by husband. Husband contended that the judgment entitled him to deduct *all* post-trial mortgage payments. Wife contended that "the court intended to say * * * that only those post trial mortgage payments [that husband] made if [wife] remained in the marital residence past the 60 days were to be reimbursed to [husband]." Wife subsequently brought a motion to clarify the judgment, urging that the trial court adopt her interpretation.

A hearing on wife's motion to clarify was held in April 2011, in front of a different judge. The trial court sided with wife, reasoning that the 2007 judgment

> "did not anticipate that the home would be taken off the market and petitioner would continue to reside in the home indefinitely and still be entitled to be reimbursed for his payment of the mortgage when and if the home is sold. The effect of this would be that petitioner will have resided in the home paying only half the mortgage amount, while respondent ends up paying for both her own housing as well as half the expense of petitioner's. This is patently unfair. The court's intention clearly was that the home would be sold as quickly as possible, that respondent needed to vacate in order to facilitate the property being cleaned up for sale, that petitioner would occupy the property and prepare it for sale, and that the property would be sold. At that point, petitioner would be reimbursed for the mortgage expense from the sale proceeds, then the parties would divide the remaining proceeds and go their separate ways."

The court noted, however, that the 2007 judgment did not indicate "what would happen if the house were not sold in a reasonable time frame." The court then concluded that,

"[g]iven the well known housing market conditions, a time frame of one year from the date of judgment is reasonable for purposes of reimbursing petitioner for the mortgage expense. This one year period would also apply with respect to repairs paid for by petitioner following the trial. Accordingly, petitioner is to be reimbursed for mortgage payments (and repair expense) for a period of one year from the date of the judgment. Mortgage payments (and repair expenses) made after that time are to be borne solely by petitioner, as he has had the benefit of residing at the residence and receiving the substantial tax benefits available to those who pay mortgage interest and real property taxes. I note further that petitioner's proposed disposition (Ex 9) also includes a 3% deduction in order to reimburse the other party for *future* resale of the property."

(Emphasis in original.)

The court later entered a supplemental judgment establishing that only husband's repair and mortgage expenses that were incurred within one year of entry of the original judgment would be deductible from the sale proceeds. The supplemental judgment also provides:

"In the event [husband] elects to buy out [wife's] interest in the property, a three percent (3%) commission to reimburse [husband] for future resale of the property shall not be deducted or included in the accounting of the amount [wife] is to be paid for her interest in the property."

On a motion to clarify a dissolution judgment, a trial court is permitted to "interpret ambiguous portions of a dissolution judgment, including the property division." *Heathman and Heathman*, 94 Or App 223, 226-27, 764 P2d 966 (1988), *abrogated on other grounds by Winningstad and Winningstad*, 99 Or App 682, 784 P2d 101 (1989). "A provision in a judgment is ambiguous if it is capable of more than one reasonable interpretation." *Neal and Neal*, 181 Or App 361, 365, 45 P3d 1011 (2002). A trial court may not, however, modify the property division. *Murray and Murray*, 88 Or App 143, 145-46, 744 P2d 1005 (1987) (citing *Rousseau and*

*Rousseau,* 76 Or App 528, 530, 709 P2d 764 (1985)). Nor may a trial court "modify the property provisions of the judgment in the guise of interpreting them." *Heathman,* 94 Or App at 226. A trial court will have done so when it adds "additional terms or obligations to those in the original judgment." *Id.* at 226 n 2.

Husband argues that the plain text of the 2007 judgment is unambiguous and that the trial court's 2011 supplemental judgment improperly modified the 2007 judgment in the guise of interpreting it. Wife responds that those provisions are ambiguous when considered in light of the 2007 judgment's clear instructions that the home be sold "as soon as possible."

Wife is correct that specific provisions of a dissolution judgment must be read "in the context of the document as a whole." *Brown v. Brown,* 206 Or App 239, 254, 136 P3d 745 (2006), *rev den,* 341 Or 449 (2006). She is also correct that, when read as a whole, the 2007 judgment clearly contemplates an expeditious sale of the residence and makes husband primarily responsible for getting the home ready to sell. She is also correct that the home failed to sell. That failure, however, does not mean that the language of the judgment is ambiguous. Although one can reasonably infer that the trial court's disposition was based on the assumption that the home would sell in the near future, that assumption did not manifest in any actual condition or limitation on the amount of repair and mortgage expenses that may be deducted.

Wife also argues that the judgment was rendered ambiguous because of an unforeseen future event—the failure to sell the home. Wife supports that argument with references to prior cases from this court. Those cases, however, do not stand for the proposition that language may become ambiguous based on the occurrence or nonoccurrence of a later event. In *Neal,* 181 Or App at 364, the original dissolution judgment provided that the wife, who had been married to a National Basketball Association (NBA) player, was entitled to receive a portion of the husband's pension payments. After the entry of that judgment, but before husband began to draw on his pension, the NBA changed the distribution

formula that was to apply to the husband's pension. *Id.* We concluded that the pension provision in the dissolution judgment was ambiguous:

> "The pension provision provides that 'Wife shall be awarded 33-1/3 percent of that certain pension plan available to Husband through the National Basketball Association,' but it fails to specify at what time wife's share should be calculated. Nothing else in the judgment sheds light on that question. We conclude that the provision is ambiguous because wife's one-third share reasonably could be based on either the formula in effect at the time of the judgment or that in effect at the time of the distribution."

*Id.* at 366. In other words, the pension provision was ambiguous because the text of that provision lacked specificity—it "fail[ed] to specify at what time wife's share should be calculated." *Id.* The change in the distribution formula revealed a latent ambiguity, but it did not create one.

In *Heathman*, 94 Or App at 227, we considered a dissolution that gave the wife an interest in the husband's business interests in "Par-4, Inc." The judgment awarded the wife "'one-fourth of all net amounts to be received by [husband] from Par-4, Inc.,'" as provided by a contractual agreement between that company and the husband. *Id.* at 225 (brackets in original). In 1985, however, the husband sold his interest in Par-4, Inc., to a third party and received a payment of $75,000. *Id.* at 225-26. We concluded that the term "to be received * * * *from* Par-4" was ambiguous. *Id.* at 225 (emphasis added). That was so because that phrase was "reasonably subject to two interpretations." It could mean either "money paid *directly* from Par-4" to husband or "money *derived* from the Par-4 agreements." *Id.* at 227 (emphasis in original).

Likewise, in *Cross and Cross*, 55 Or App 422, 637 P2d 1386 (1981), a dissolution judgment provided that spousal support to the wife was to continue until one of a number of specified events occurred. One of those events was that the wife's residence *"is paid for in full in December, 1985." Id.* at 424 (emphasis in original). The mortgage on that residence, however, was fully satisfied in 1979. *Id.* But, again, that subsequent event did not create an ambiguity.

Rather, an ambiguity already existed in the text of the judgment—the text could mean either that support payments were to end "in December, 1985" or, alternatively, when the residence is "paid for in full." The trial court may have assumed that those two events would occur simultaneously. When they did not, however, that simply *"illustrated* that the expression 'until the said residence property is paid for in full in December, 1985,' was susceptible to more than one interpretation." *Id.* at 425 (emphasis added).

With those principles in mind, we agree with husband that the disputed provisions of the 2007 judgment are not ambiguous. The plain text of the judgment states that "post trial expenses for repairs" and "post trial mortgage payments" shall be "deducted from the proceeds that result from the sale of the residence." The text of those provisions plainly identifies what expenses are to be deducted— "expenses for repairs" and "mortgage payments"—and indicates the time period for which those expenses may be deducted—"post trial." The occurrence of an unforeseen event cannot make those otherwise clear directives ambiguous. The failure to sell the home may well have frustrated the purpose of the 2007 judgment, but it did not create a new ambiguity in that judgment.[1]

There is nothing in those provisions, or in any other part of the 2007 judgment, that requires the sale of the marital residence to be completed within a particular time frame. Thus, when the court in 2011 concluded that "a time frame of one year from the date of judgment is reasonable for purposes of reimbursing petitioner for the mortgage expense," the court added an additional term to the original judgment. We reach the same conclusion regarding the provision in the supplemental judgment that prohibits the parties from agreeing to deduct a three percent commission

---

[1] We emphasize that the scope of our review is limited to the question of whether the trial court properly interpreted the disputed provisions of the 2007 judgment. We do not decide how the facts underlying the parties' dispute should be applied to the terms of the judgment. That is, we express no opinion as to whether the parties fully performed their respective obligations under the judgment or the legal effect (if any) of the residence being taken off the market. Consequently, we do not decide what present expenses must be deducted from the proceeds of the sale of the residence.

from the amount wife would be paid in exchange for her interest in the property.

Wife also argues that the court had inherent authority to modify the property division because, due to a reservation of jurisdiction clause, the 2007 judgment was not final. We do not address that argument because, as wife concedes, she did not make that argument to the trial court. Moreover, had wife made that argument the record almost certainly would have developed differently. *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 660, 20 P3d 180 (2001) ("[I]f the losing party might have created a *different* record below had the prevailing party raised that issue, and that record could affect the disposition of the issue, then we will not consider the alternative basis for affirmance."). Wife's motion to clarify the judgment raised a pure issue of textual interpretation. Had she requested that the judgment be modified, husband almost certainly would have introduced evidence on the issue of whether the circumstances justified a change to the original judgment.

For the foregoing reasons, we conclude that the trial court's supplemental judgment impermissibly modified the original judgment.

Reversed.