Argued and submitted August 2, 2010, affirmed March 16, 2011

In the Matter of the Estate of
Heather Carol McIntire, Deceased.

Frederick McINTIRE
and Jacob Rivers,
by and through his guardian *Ad Litem*, Mark Rivers,
*Appellants,*

*v.*

Jason LANG,
individually;
and D. Ben Henzel,
in his capacity as Personal Representative of
the Estate of Heather Carol McIntire,
*Respondents.*

Clackamas County Circuit Court
P0801041; A141918

254 P3d 745

Heidi K. Brown argued the cause for appellants. With her on the briefs were Bennett, Hartman, Morris & Kaplan, LLP, and Michael J. Morris.

Brooks Cooper argued the cause and filed the brief for respondent Jason Lang.

No appearance for respondent D. Ben Henzel.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Rosenblum, Judge.*

* Wollheim, J., *vice* Haselton, J.

ROSENBLUM, J.

**ROSENBLUM, J.**

Petitioners appeal from a judgment of the probate court declaring that respondent's claim against the estate of Heather McIntire is valid, imposing a constructive trust over the estate's assets for the purpose of securing payment of the claim, and authorizing the personal representative of the estate to partially pay the claim. Petitioners, who are two of McIntire's heirs, argue on appeal that respondent's claim is not valid and that the court thus erred in imposing a constructive trust. On *de novo* review,[1] we affirm.

We take the facts from the trial court record. The relationships of the various individuals involved in this case are as follows. Heather McIntire, the decedent, was married three times. She first married Mark Rivers. They had a son, J, who is a petitioner in this case through his father as guardian *ad litem*. Heather was married to respondent from 2000 to 2004. They had a daughter, M, who is not a party in this case. In 2005, Heather married Fred McIntire, who is the other petitioner in this case. Heather and Fred had no children together.[2]

Respondent's claim against the estate is based on the following provisions in the stipulated judgment that dissolved his marriage to Heather:

> "Each party shall immediately purchase a life insurance policy on his life in the amount of $250,000, naming the other party as Trustee for the benefit of their child for the purpose of securing the payment of support obligations. As soon as it is available and not later than 60 days from the date this Judgment is signed by the court, both parties shall provide the company name and policy number to the other parent. Thereafter, the parties shall promptly sign a supplemental judgment confirming the policy details so that a

---

[1] A 2009 amendment to ORS 19.415(3) made *de novo* review in most equity cases discretionary. *See* Or Laws 2009, ch 231, § 2. Because the notice of appeal in this case was filed before the effective date of the amendment, we apply the 2007 version, under which *de novo* review is required.

[2] Heather was known as Heather Lang when she was married to respondent, Jason Lang, and as Heather McIntire when she was married to petitioner Fred McIntire. To avoid confusion, we refer to Jason Lang as "respondent" and to Heather and Fred McIntire by their first names. We refer to Fred and J collectively as "petitioners."

copy of the judgment as supplemented may be served on the applicable life insurance company.

"B. Neither party shall borrow money from the insurance policy. Pursuant to ORS 107.820(6), each party shall provide the other with a true copy of the insurance policy described above and shall immediately provide written notice of any action that will reduce the death benefit or change the designation of the beneficiaries under the policy.

"C. Pursuant to ORS 107.820(6), the party named as beneficiary shall cause a certified copy of the Judgment dissolving the parties' marriage to be delivered to the applicable life insurance company or companies requesting notification when premium payments have not been made or the insured takes any action that will change the beneficiary or reduce the benefits of the policy.

"D. In the event either party violates these insurance provisions, a constructive trust shall be imposed over that party's estate as well as the proceeds of all insurance owned by that party at the time of his or her death to secure payment of this insurance obligation."

The judgment also provided that neither party would pay child support or spousal support to the other party.[3]

Respondent and Heather negotiated the terms of their marital dissolution. Respondent's attorney drafted a stipulated judgment to be submitted for court approval. Respondent signed the stipulated judgment on November 10, 2004. Heather signed it two weeks later, and it was submitted to the court, which approved it. The day after respondent, who is a Farmers insurance agent, signed the stipulated judgment, Heather went to his office and filled out an application for a $250,000 life insurance policy, naming respondent as the beneficiary. Respondent served as the agent on the policy, which was issued by Farmers the following month. Respondent obtained a policy naming Heather as beneficiary of $250,000.[4] Neither party filed a supplemental judgment

---

[3] Under the child support guidelines, *see* OAR 137-050-0700 - 137-050-0765, respondent would have been obligated to pay Heather $85 per month in child support. However, they stipulated that that amount was inappropriate and that there would be no child support award.

[4] Respondent actually purchased a policy for $500,000, but he named two beneficiaries, with each designated to received 50 percent of the proceeds.

with the court or requested notification of failure to pay premiums from the insurance companies.

At some point thereafter, Heather allowed her policy to lapse. In February 2006, she filed an application for reinstatement of the policy through a different Farmers agent. She did not change the designation of beneficiary. The policy was reinstated the following month. In March 2007, Heather again allowed the policy to lapse. She did not apply for reinstatement.

Heather died in November 2007. She did not leave a will. Thus, under the laws of intestate succession, Fred was to inherit 50 percent of Heather's estate, and J and M were each to inherit 25 percent.

Sometime after Heather died, respondent learned that her Farmers life insurance policy had lapsed. He notified the personal representative, Henzel, of Heather's estate that he had a claim for $250,000 against the estate based on the dissolution judgment. Henzel accepted the claim. Henzel also agreed to sell Heather's house to respondent and to make a partial distribution of $100,000 to him to be applied toward the purchase of the house. Henzel filed a petition with the probate court seeking authorization to sell respondent the house and to make the $100,000 distribution.

While the petition was pending in the court, Fred objected to respondent's claim against the estate. He asserted that, under the terms of the dissolution judgment, Heather was required to buy life insurance only "for the purpose of securing the payment of support obligations." Because the judgment did not provide for child support or spousal support, Fred contended that there were no support obligations to secure, so Heather was not required to obtain life insurance. Henzel was inclined to disagree with that interpretation of the judgment, but, in a letter to Fred's attorney on August 28, 2008, he agreed not to make the $100,000 distribution to respondent until the issue could be resolved.

The following day, the probate court filed a limited judgment authorizing Henzel to make the distribution to respondent and to sell him the house. Notwithstanding that judgment, Henzel did not make the distribution. Instead, on

November 24, 2008, he filed an application for instructions and an order authorizing payment of the claim, asserting that the dispute between respondent and Fred left him in the "uncomfortable position of facing a liability to either [respondent or Fred], depending upon how the estate assets are distributed," and that he was thus unwilling to act without further instruction from the court.

Two days later, respondent filed a motion for an order for Henzel to show cause why he had not complied with the limited judgment. Shortly thereafter, on December 8, 2008, Fred and J filed a petition for declaratory judgment seeking a declaration that respondent does not have a valid claim against the estate and that Henzel should not pay his claim.

A single hearing was held on the application, the motion, and the petition. After the hearing, the court issued another limited judgment declaring that Heather was obligated by the dissolution judgment to maintain life insurance and that respondent's claim against the estate was valid and properly allowed by Henzel. The judgment imposed a constructive trust over the assets of Heather's estate for the purpose of securing payment of the life insurance obligation. Finally, it authorized Henzel to partially pay respondent's claim in accordance with the earlier limited judgment.

■ Petitioners appeal the second limited judgment, assigning error to the probate court's imposition of a constructive trust over the estate's assets.[5] When "the law employs a constructive trust, the doctrine of unjust enrichment governs generally the substantive rights of the parties." *Barnes v. Eastern Western Lbr. Co.*, 205 Or 553, 597, 287 P2d 929 (1955). In a case with facts resembling those before us, the Supreme Court recently set out the "elements that a [party] must prove in order to prevail on an unjust enrichment claim in circumstances like those presented here." *Tupper v. Roan*, 349 Or 211, 223, 243 P3d 50 (2010). The court explained that, to prevail, a party seeking a constructive

---

[5] Petitioners also assign error to the court's admission into evidence of purported hearsay testimony by respondent. We reject that assignment of error without discussion.

trust is required to prove that (1) property or a property interest rightfully belonging to him or her was taken or obtained by someone else under circumstances that were wrongful or inequitable; (2) the person who now possesses the property is not a bona fide purchaser for value without notice of the claimant's interest in the property; and (3) the property in the hands of that person is the very property that belongs to the claimant or is a product or substitute for that property. *Id.*

■ In this case, petitioners' arguments do not concern the second or third elements. Thus, we address only the first element. Petitioners argue that respondent lacks a property interest in Heather's estate. They renew their contention that, because the dissolution judgment did not create a spousal or child support obligation, it did not require Heather to obtain life insurance to secure any such obligation. Thus, they contend, the provision in the judgment for a constructive trust has no effect and did not vest in respondent a property interest in the estate. Petitioners also raise an equitable defense to respondent's claim against the estate, arguing that respondent failed to protect his rights by filing a supplemental judgment and requesting notice from the insurance company in the event that Heather failed to maintain the insurance policy. They argue that equity aids only the vigilant, not those who slumber on their rights.

We begin by determining whether respondent has a property interest in the estate. In *Tupper*, the Supreme Court held that, when a settlement agreement incorporated in a dissolution judgment provides that a constructive trust over specific property is to be created in the event that one of the parties fails to abide by an obligation to maintain life insurance naming the other party as the beneficiary, the agreement vests in the other party a property interest in the object of the constructive trust. *Id.* at 227. Here, the estate is one of the objects of the constructive trust provided for in the dissolution judgment. Thus, the only question is whether the dissolution judgment obligated Heather to obtain life insurance.

The key sentence in the dissolution judgment provides, "Each party shall immediately purchase a life insurance policy on his life in the amount of $250,000, naming the

other party as Trustee for the benefit of their child for the purpose of securing the payment of support obligations." Petitioners contend that that sentence has no effect because the judgment imposed no spousal support or child support obligations. Respondent argues that the insurance requirement was not intended to secure support obligations imposed in the dissolution judgment, but to secure the general obligation that all parents have to support their children. He also notes that Heather obtained life insurance, naming him as the beneficiary, immediately after they reached the agreement that is reflected in the judgment, and that she had the policy reinstated after initially allowing it to lapse. He argues that her conduct reflects that she understood the agreement to obligate her to obtain life insurance.

The parties agree that the meaning of the dissolution judgment is properly analyzed as a question of contract interpretation, given that respondent and Heather negotiated and stipulated to the terms of the judgment. In interpreting a contract, we look to the contract terms in context to determine whether they are ambiguous. *Yogman v. Parrott*, 325 Or 358, 361, 937 P2d 1019 (1997). If they are not, we construe the terms as a matter of law, and our analysis ends. *Id.* If the contract is ambiguous, a question of fact arises as to the intent of the parties. *Arlington Ed. Assn. v. Arlington Sch. Dist. No. 3*, 196 Or App 586, 595, 103 P3d 1138 (2004). A contract is ambiguous if it can reasonably be given more than one plausible interpretation. *North Pacific Ins. Co. v. Hamilton*, 332 Or 20, 25, 22 P3d 739 (2001).

Understood in context, the insurance provisions of the dissolution judgment are susceptible to only one plausible interpretation—namely, respondent's. Read in isolation, the insurance provisions can be understood as petitioners interpret them—that is, to apply to support obligations created by the dissolution judgment itself. However, we must read the terms in context. *See Yogman*, 325 Or at 361. Given that the judgment specifically provides that neither party will pay child or spousal support, the insurance provisions have no effect if they are interpreted to secure only payment of support ordered in the judgment. However, as respondent argues, the judgment can be understood to require life insurance to secure each parent's general obligation to provide

for M. *See* ORS 109.010 ("Parents are bound to maintain their children who are poor and unable to work to maintain themselves[.]"). Respondent's interpretation also gives effect to all provisions of the dissolution judgment. Accordingly, we cannot adopt petitioners' interpretation. *See* ORS 42.230 ("In the construction of an instrument, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted; and *where there are several provisions or particulars, such construction is, if possible, to be adopted as will give effect to all*." (Emphasis added.)). We can conceive of no other plausible interpretation of the judgment. It follows that the judgment is unambiguous and that it required Heather to obtain life insurance.

Even if the dissolution judgment were ambiguous, giving rise to a question of fact as to the parties' intent, we would reach the same conclusion as to its meaning. The evidence in the record indicates that both respondent and Heather understood that the judgment required them to obtain life insurance. *See Tarlow v. Arntson*, 264 Or 294, 300, 505 P2d 338 (1973) ("How the original parties and their successors conducted themselves in relation to the agreement is instructive in our determination of what must have been intended."). Shortly after reaching the agreement expressed in the judgment, both Heather and respondent obtained life insurance, naming each other as the beneficiary of the amount required by the judgment. Although they did not name each other as the beneficiary in trust for M, as the judgment specified, we find it unlikely that, on the cusp of divorce, they would name each other as the beneficiaries of new life insurance policies unless it was intended to benefit their child.

In short, we conclude that Heather and respondent intended, and the judgment provided, that each was required to obtain life insurance. Accordingly, we conclude that respondent has a property interest in Heather's estate.

■ We turn to petitioners' equitable defense, in which they argue that respondent failed to protect his rights. Petitioners rely on the following paragraph in the life insurance provisions of the dissolution judgment:

"C. Pursuant to ORS 107.820(6), the party named as beneficiary shall cause a certified copy of the Judgment dissolving the parties' marriage to be delivered to the applicable life insurance company or companies requesting notification when premium payments have not been made or the insured takes any action that will change the beneficiary or reduce the benefits of the policy."

They also rely on ORS 107.820(5), which provides:

"A party who is the beneficiary of any policy under this section upon which the other party is obligated to pay premiums, is entitled, in the event of default by the paying party, to pay the premiums on the policy and to obtain a supplemental judgment for reimbursement of any money so expended. A default in the payment of premiums by the party obligated by the judgment or order is a contempt of the court."

Petitioners contend that, if respondent had complied with the terms of the judgment by delivering a copy of the judgment to the insurance company that issued Heather's policy with a request for notification when premium payments were not made, he could have ensured that the policy remained in effect.

■ Although it is a well-recognized maxim that equity aids only the vigilant, not those who sleep on their rights, *see Cook v. Cook*, 167 Or 474, 485, 118 P2d 1070 (1941), we will not apply such equitable defenses in a manner contrary to public policy. *See Community Bank v. Jones*, 278 Or 647, 672, 566 P2d 470 (1977) (concluding that preservation of policies established by the Uniform Commercial Code foreclosed application of equitable defense of estoppel based on the plaintiff's failure to supervise inventory in which it had a security interest). ORS 107.820 furthers a policy of ensuring that divorced parents provide financial support for their minor children. It would be contrary to that policy to refuse to enforce the terms of the dissolution judgment on the ground that respondent failed to vigilantly protect M's right to support from Heather. Accordingly, we reject petitioners' argument that we should reverse the probate court's judgment on the ground that respondent failed to protect his rights.

Affirmed.