In the Matter of the Marriage of

Lisa Lee PIERCE,
nka Lisa Lee Vaught, fka Lisa Lee Chatfield,
aka Lisa L. Heiple, aka Lisa Pierce,
*Petitioner-Respondent,*
*and*

STATE OF OREGON,
acting by and through
the Division of Child Support,
*Petitioner,*
*and*

Kippy Robert PIERCE,
aka Kip Pierce, aka Kippy R. Pierce,
aka Kippy Pierce, Jr.,
*Respondent-Appellant.*

Clackamas County Circuit Court
DR0102225; A151441

313 P3d 338

Kip Pierce filed the briefs *pro se.*

Tony Pizzuti filed the brief for respondent.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

SERCOMBE, J.

## SERCOMBE, J.

Father appeals a judgment that concluded that mother was not in willful contempt of a 2004 supplemental judgment and that he was in willful contempt of that judgment. He assigns error to the trial court's determinations that (1) mother did not willfully violate the terms of a court-ordered parenting plan and (2) father failed to make monthly payments toward a $25,000 money award for a child support arrearage, as required by the 2004 judgment, and therefore owed interest on the unpaid balance of that money award. For the reasons that follow, we reverse the trial court's determination that father was in contempt for failure to make payments to the child support arrearage and the award of interest on the unpaid balance of the arrearage.[1] We otherwise affirm.

We provide a brief procedural background and set forth the relevant facts and pertinent provisions of the 2004 judgment as we address each of father's assignments of error below. In 2001, the trial court entered a judgment dissolving the parties' marriage, providing for child and spousal support, and granting mother custody of the parties' children subject to a parenting plan. In 2003, father moved to set aside the 2001 judgment, arguing that he did not have notice of the 2001 proceedings. The parties later resolved that dispute, and on August 25, 2004, the trial court entered a supplemental judgment that was stipulated to by the parties.[2]

In 2011, each party filed a motion requesting that the other party be held in contempt for willfully violating the 2004 judgment. Father claimed that mother had willfully violated the terms of a parenting plan that was part of the 2004 judgment. Mother asserted that, starting in September 2009, father willfully violated a requirement in the 2004 judgment that he make monthly payments toward a $25,000 money award for a child support arrearage. Mother also claimed that, as a result of his failure to pay, father owed interest on the unpaid balance of the arrearage award.

---

[1] We reject without discussion father's remaining assignment of error relating to payment for his children's medical and dental expenses.

[2] The parties reached a stipulated agreement on the record at two earlier hearings; the transcripts of those hearings are not included in the record.

The trial court entered a supplemental judgment concluding that mother was not in contempt of a "court-ordered parenting plan" because no parenting plan was included with the 2004 judgment in the court file. The court, however, found father in contempt for failing to make payments to the child support arrearage and awarded mother interest on the unpaid balance of the arrearage. On appeal, father assigns error to those rulings. We address each in turn.

Father first contends the trial court erred in its determination that mother was not in contempt for willfully failing to comply with a court-ordered parenting plan that was part of the 2004 judgment. The 2004 judgment provides that "[father] shall be granted the following parenting plan with the children of the parties as set forth in the attached document entitled 'Parenting Plan.'" At the contempt hearing, the parties argued over whether mother had violated the terms of a parenting plan that father had included with his contempt filings.

In its letter opinion, however, the trial court ruled that "[t]he Supplemental Judgment signed by the court on August 25, 2004 purports to adopt an 'attached' Parenting Plan, but does not have a Parenting Plan attachment." The court determined that, because "there has been no court ordered parenting plan in place, there was nothing for Mother to violate. Therefore, Mother is not in contempt of court for failing to comply with court ordered parenting time." (Underscoring omitted.) Before the trial court entered its judgment, father filed an "Opposition to Proposed Supplemental Judgment," arguing that "[i]t is a fact that there is a Parenting Plan which was attached to the 2004 Supplemental Judgment" and that the parties treated the parenting plan submitted with father's contempt filings as part of the 2004 judgment. The trial court then issued its judgment, finding that "[t]here is no Court-ordered parenting plan in place and Mother * * * is not in contempt for failing to comply with court-ordered parenting time[.]"

On appeal, father again argues that, even if the parenting plan was not attached to the original 2004 judgment in the trial court file, that plan was part of the 2004 judgment. Father points out that the 2004 judgment references

a parenting plan attachment, that he submitted a document entitled "parenting plan" with his contempt filings, and that mother treated that document as the parenting plan referenced in the 2004 judgment. Father argues that "common sense" shows that the parenting plan attachment was "mistakenly omitted" from the original 2004 judgment in the trial court file, likely because it "was lost or misplaced by the trial court." According to father, the trial court should have simply "ask[ed] for a copy" of the parenting plan to correct the omission from the 2004 judgment in the trial court file.

We begin with the relevant statutes addressing court-ordered parenting plans. Although parents are encouraged "to develop their own parenting plan," ORS 107.101(3), to be made part of a judgment, a parenting plan developed by the parties must be submitted to the trial court for approval. Under ORS 107.102(1), "there shall be developed and *filed with the court* a parenting plan to be included in the judgment." (Emphasis added.) Under ORS 107.105(b), "[w]hen a parenting plan has been developed as required by ORS 107.102, the court shall *review the parenting plan and, if approved, incorporate the parenting plan into the court's final order*." (Emphasis added.) Likewise, for the trial court to find a party in contempt for willfully violating a parenting plan, that plan must be part of a court order or judgment. Under ORS 33.015(2), "[c]ontempt of court" includes "willful[] *** [d]isobedience of, resistance to or obstruction of the court's authority, process, orders or judgments." *See St. Sauver and St. Sauver*, 196 Or App 175, 185, 100 P3d 1076 (2004) ("The essential elements for a contempt judgment are '(1) a valid court order; (2) knowledge of the order by the contemnor; and (3) the contemnor's voluntary noncompliance with the order.'" (quoting *Clark and Clark*, 171 Or App 205, 209, 14 P3d 667 (2000))).

Here, the 2004 judgment references a parenting plan attachment, but no parenting plan is attached to the 2004 judgment in the trial court file and no parenting plan was filed with the court and made part of the trial court file during the 2004 proceedings. In those circumstances, the trial court did not err in finding that a parenting plan was not part of the 2004 judgment. The trial court file contains "all the original papers filed in the trial court whether

before or after judgment," ORS 19.005(7), and the trial court properly relied on its examination of that file in determining whether the parenting plan was part of the 2004 judgment. Despite the reference to a parenting plan in the 2004 judgment, the trial court file shows that the parties never submitted—and the trial court never approved—a parenting plan as part of that judgment. Thus, the 2004 judgment does not actually set forth any requirements for the parties regarding parenting time.

We acknowledge that, because the judgment referenced a parenting plan attachment, it is possible that the attachment was simply missing from the trial court file. The Oregon Rules of Civil Procedure contemplate errors in judgments or other parts of the record and allow for correction of those errors in certain circumstances, such as the existence of a clerical mistake. *See* ORCP 71 A ("Clerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time on its own motion or on the motion of any party and after such notice to all parties who have appeared, if any, as the court orders."). But here, after the trial court issued its letter opinion alerting the parties that no parenting plan was attached to the original 2004 judgment, father made no motion to the trial court to correct an omission in the judgment. On appeal, father does not address that failure, nor does he explain why the trial court had an obligation to act *sua sponte*.

Instead, father asserts, as he did below, that there *must* have been an omission in the trial court file because the parties believed that the parenting plan referenced at the contempt hearing was part of the 2004 judgment. Father's contention is beside the point. The trial court found as fact that the parenting plan was not attached to the judgment or part of the trial court file. We are bound by the trial court's factual findings if they are supported by any evidence in the record. And, here, there was evidence that the parenting plan was not filed with the court. Accordingly, the trial court did not err in ruling that the parenting plan that father presented to the trial court was not enforceable through a contempt proceeding.

Father next assigns error to the trial court's determination that he was in contempt because he failed to make $100 monthly payments toward the $25,000 money award for a child support arrearage and that he was required to pay nine percent interest on the unpaid balance. As relevant here, the 2004 judgment required father to pay (1) $100 a month to satisfy an arrearage for child support (*i.e.*, child support that father owed through 2004); and (2) an amount originally set at $1,029 per month, but later reduced to $635 per month, for current and future child support (*i.e.*, money to support the children from 2004 onward). The 2004 judgment specifically describes the parties' agreement as to the arrearage as follows:

> "[Father] agreed that there is $25,000.00 in child support owing as of February 29, 2004. [Father] agrees to pay this arrearage off at the rate of $100.00 per month commencing March 1, 2004, and a like payment on the first day of each month hereafter until the judgment is paid in full. This judgment will be without interest provided that [father] pays the monthly payment each month. If any payment is not paid, then the judgment shall accrue interest at the rate of 9% per annum."

That judgment also provides:

> "[Mother] is awarded judgment against [father] for unpaid child support through February 29, 2004, in the amount of $25,000.00. This judgment shall be paid by [father] to [mother] at the rate of $100.00 per month commencing March 1, 2004, and a like payment on the first day of each month hereafter until the child support judgment is paid in full. This judgment shall be interest free, provided, that [father] pays the $100.00 payment each month and shall accrue interest at 9% per annum on the entire unpaid judgment if [father] fails to make said monthly payments."

Finally, the money award section of the judgment, required by ORS 18.042, repeats the second paragraph above verbatim, but further states, "Interest start date: Upon [father] failing to make a monthly child support payment."

In the trial court, mother argued that father failed to make payments toward the child support arrearage beginning in September 2009. In response, father did not dispute

that he had fallen behind on his *current* monthly child support obligations in September 2009; he argued, however, that, from September 2009 on, he continued to pay $100 each month, and he began to mark those payments "for arrears." As he had done prior to September 2009, father made the arrears payment in a check separate from any payment for current child support. Father argued that under *Gayer and Gayer*, 326 Or 438, 952 P2d 1030 (1998), he could direct his monthly payment to the arrearage, even if he could not fully pay his current child support. Mother responded that father could not elect to direct his payment to the arrearage when he could not satisfy his current obligation. Alternatively, mother relied on the text in the "money award" section of the judgment—that interest would begin to run on the failure "to make a monthly child support payment"—to argue that the interest would begin to run on father's failure to make *any* child support payment, including a failure to make a payment for current child support.

The trial court concluded that father could direct his payment toward the arrearage, but failed to do so. The trial court first determined that father did not "adequately direct" the application of his $100 payments to the child support arrears award. The trial court reasoned that, under *Gayer*, "a debtor must *clearly* direct the funds paid in order to control their application." In the trial court's view, in September 2009, a new arrearage of $424 was created when father paid only $211 toward his $635 monthly obligation for current child support. Although father separately paid $100 and marked that payment "for arrears," the trial court concluded that father "did not specify whether the $100.00 payment was intended for the new arrearage or the 2004 arrearage," and thus mother could "elect to apply that payment to the new arrearage rather than the old one." The court ultimately concluded that, starting in September 2009, father had failed to pay $100 toward the child support arrearage and owed interest as of that date. Alternatively, the trial court reasoned that, because the 2004 judgment marked the "interest start date" as the date father failed "to make a monthly child support payment," the interest obligation was triggered when father failed to pay *current* child support. In the trial court's view, "[t]his was a sensible,

equitable provision. If [father] failed to make a monthly child support payment, then a new arrearage would begin to accrue, which would defeat the purpose of providing incentive to pay off the old arrearage."

Before addressing the parties' specific arguments on appeal, we begin with an overview of *Gayer*, upon which the trial court and the parties relied. In *Gayer*, the father, who was required to pay monthly child support but also owed the mother for spousal and child support arrearages, directed that his monthly payment should apply first to his current obligation for child support, then to the spousal support arrearage. 326 Or at 439-40. The trial court, in resolving a dispute about interest owed on the father's support arrearages, ruled that the father could direct how to apply his support payments. *Id.* at 440-41. On appeal, the mother argued that the trial court erred in finding that the father, as a support obligor, had a right to direct how to apply his payments. In the mother's view, absent some agreement to the contrary, "all payments for spousal and child support * * * apply to the principal and accrued interest on the earliest accruing support obligation." *Id.* at 441. The father responded "that a child support payment applies first to the current month's obligation, then to the earliest matured debt owed the obligor." *Id.* at 442.

The Supreme Court concluded that common-law rules regarding the application of payments made by a debtor to a creditor should apply in the domestic relations context. Under those principles, "'[a] debtor who makes payment to his creditor having two or more claims may designate the claim to which the payment is to be applied,'" and "'if the debtor fails to do so, the creditor may make the application.'" *Id.* at 443 (quoting *Fowler v. Courtemanche et al.*, 202 Or 413, 426, 274 P2d 258 (1954)). Thus, the court determined that the father could direct that his payment be applied to his current support obligation and then to the spousal support arrearage. Yet the court specifically rejected the rule proposed by the state, appearing as *amicus curiae*, "that all child support payments are to be applied first to the current monthly child support obligation and only then to accrued child support arrearages, oldest arrearage first." *Id.* at 444-45. The state relied on regulations providing that, "when an

obligee is or has received public assistance, amounts collected by the state for child support are allocated first to the current monthly obligation." *Id.* at 445. The court, however, found no "basis for departing from the traditional common-law rule with respect to debts arising from support obligations." *Id.* The court therefore held "that the trial court did not err in ruling that [the] father could direct the application of his monthly support payments." *Id.*

The court in *Gayer* further held that the father had adequately expressed his intent to direct his payments to a particular debt. To direct payment to a particular debt, the debtor "must manifest to the creditor an intent to do so 'at or before the time of payment.'" 326 Or at 443 (quoting *Johnson Lbr. Corp. v. Leonard et al.*, 192 Or 639, 668-69, 236 P2d 926 (1951)). "The debtor's intent need not be manifested in express words, but may be deduced from acts and other circumstances." *Id.* Accordingly, because the father had sent a letter to the district attorney stating that part of his payment should be applied first to current child support and then to spousal support arrearages, the trial court properly gave that direction effect for payments made on or after the date of the letter. *Id.* at 446.

In this case, mother "concurs with" the trial court's interpretation of *Gayer*, apparently agreeing with the court's decision that father could direct his payment toward the arrearage, but that he failed to "clearly direct" his payments to the arrearage. Father contends that, as required by *Gayer*, he manifested an intent to direct his payments to the 2004 arrearage by making payments for the arrearage and current monthly support in separate checks and by marking the $100 payments "for arrears." We review the trial court's determination that, under *Gayer*, father did not adequately direct his payments to the 2004 arrearage for legal error.

We agree with father that the evidence shows that he manifested his intent to direct payment to the 2004 arrearage. Under *Gayer*, "[t]he debtor's intent [to direct payment to a particular debt] need not be manifested in express words, but may be deduced from acts and other circumstances." *Id.* at 443. Here, father marked his payment "for arrears"; the payment was for $100, the exact monthly amount due for the

arrearage; and father's general practice from 2004 onward was to pay the $100 arrears payment and the current child support payment with separate checks. Father's express directions, as well as his actions and the surrounding circumstances, show an intent to direct his payments to the 2004 arrearage. The trial court therefore erred in concluding that father "did not make the $100.00 per month payment to the 2004 child support arrears Judgment starting in September 2009."

Father next argues that the trial court erred, as a matter of law, in determining that father's obligation to pay interest on the arrearage was triggered when, in September 2009, father failed to fully pay his *current* monthly child support. Mother responds that, because the money award for the child support arrearage marked the "interest start date" as when father "fail[ed] to pay a monthly child support payment," interest on the unpaid arrearage began to run when father failed to make a payment toward the child support arrearage or toward his current monthly child support. We review the meaning of the supplemental judgment "as a question of contract interpretation," given that mother and father negotiated and stipulated to the terms of the judgment. *McIntire v. Lang*, 241 Or App 518, 525, 254 P3d 745 (2011). Our first task, then, is to examine the text of the disputed provision in the context of the document as a whole. *Brown v. Brown*, 206 Or App 239, 254, 136 P3d 745, *rev den*, 341 Or 449 (2006). If the text's meaning is unambiguous, we decide the provision's meaning as a matter of law. *Id.*

Although the term "monthly child support payment," standing alone, could be understood, as mother and the court concluded, to include *current* monthly child support payments, we must read that term in context of other provisions that describe the interest obligation for the arrearage. The 2004 judgment includes two identical provisions—one of which is included within the money award section— stating that the "judgment [for the child support arrearage] shall be interest free, provided, that [father] pays *the $100.00 payment each month* and shall accrue interest at 9% per annum on the entire unpaid judgment if [father] fails to make *said monthly payments*." (Emphases added.) Those provisions describe the condition that must be satisfied for

the judgment for the arrearage to remain "interest free" (father "pays the $100.00 payment each month") and, correspondingly, provide that failure to meet that condition (*i.e.*, "fail[ure] to make said monthly payments") triggers nine percent interest per annum. The "interest start date" section and its reference to "a monthly child support payment" follows the two identical and longer child support arrearage provisions and is plainly a summary of one of their terms. We decline to give that summary a different meaning than the provisions it recounts.

Where the judgment's provisions repeatedly state that there is only one requirement for the arrearage to remain interest free—that father pay $100 each month—we interpret the term "monthly child support payment" to describe the husband's obligation to make monthly payments toward the child support arrearage, and we reject mother's broad reading of "monthly child support payment" to create a different obligation to avoid payment of interest on the arrearage. Accordingly, because father paid $100 toward the arrearage each month, the trial court erred in awarding mother interest on the unpaid balance of the arrearage.

Supplemental judgment reversed as to finding of contempt for failure to make child support arrearage payments and as to money award for interest on arrearage; otherwise affirmed.