In the Matter of
the Estate of Archie Q. Adams, Sr., Deceased.

Archie Q. ADAMS, Jr.;
Glen A. Adams;
and Jeanne Wollman, individually,
*Appellants,*

*v.*

WEST COAST TRUST,
as Personal Representative of
the Estate of Archie Q. Adams, Sr.,
and as Trustee for the trusts established under
the will of Archie Q. Adams, Sr.;
James Van Horn;
and Northwest Natural Gas Company,
*Respondents.*

Linn County Circuit Court
19209A; A145158

338 P3d 171

Theodore E. Sims argued the cause for appellants. With him on the briefs was Sims & Sims.

James R. Cartwright argued the cause for respondent West Coast Trust. With him on the brief was Matthew Whitman.

Randolph C. Foster, Amy Edwards, and Stoel Rives LLP filed the brief for respondent Northwest Natural Gas Company.

Stephen R. Owen waived appearance for respondent James Van Horn.

Before Wollheim, Presiding Judge, and Hadlock, Judge, and Schuman, Senior Judge.

WOLLHEIM, P. J.

**WOLLHEIM, P. J.**

Petitioners are the children and heirs of Archie Q. Adams, Sr., the decedent, who died in 2000. They appeal from a probate court judgment approving a final and an amended accounting submitted by respondent West Coast Trust, the personal representative of the decedent's estate. Respondent Northwest Natural Gas Company (NW Natural) purchased mineral rights from the estate. Respondent James Van Horn, the son of and conservator and then personal representative for Louise Adams, the decedent's surviving spouse, appeared in the probate proceeding to protect his mother's interest in the estate. Petitioners assign error to the probate court's denial of their objection to the final and amended accounting and denial of their petition to surcharge the personal representative $215,573,115.60 for the personal representative's alleged negligent sale of the mineral rights to NW Natural. *See* ORS 116.123.[1] They also challenge the probate court's rejection of their request to set aside the personal representative's sale of the mineral rights or to require NW Natural to disgorge $215,573,115.60 on a theory of unjust enrichment. Finally, they contend that the probate court erred in determining that NW Natural is not a party to the probate proceeding, and erred in awarding the personal representative an extraordinary fee of $11,250. We conclude that the probate court did not err and affirm.

We have traditionally reviewed probate court proceedings *de novo*. *See, e.g., McIntire v. Lang*, 241 Or App 518, 520 n 1, 254 P3d 745 (2011); *Brown v. Hackney*, 228 Or App 441, 443, 208 P3d 988 (2009); *Stanfield v. Stanfield,* 192 Or App 447, 449, 86 P3d 77, *rev den*, 337 Or 160 (2004). However, since June 4, 2009, *de novo* review is now discretionary in most equitable cases, like this one. ORS 19.415(3)(b).

---

[1] ORS 116.123 provides:

"To the extent that the final account is approved, the personal representative and the surety of the personal representative, subject to the right of appeal, to the power of the court to vacate its final orders and to the provisions of ORS 116.213, are relieved from liability for the administration of the trust. The court may disapprove the account in whole or in part, surcharge the personal representative for any loss caused by any breach of duty and deny in whole or in part the right of the personal representative to receive compensation."

Petitioners have requested *de novo* review of the record. As will become apparent, the extraordinary circumstances of this lengthy litigation justify the exercise of our discretion to review *de novo*. ORAP 5.40(8). Many of the procedural facts are undisputed, and the probate court made extensive findings of fact that are supported by legally sufficient evidence in the record. ORS 19.415(3). However, there are some factual disputes that have not been the subject of explicit findings by the probate court and that we conclude must be resolved on appeal. We set out those disputes as well as our findings explicitly where applicable.

The decedent owned mineral rights to 27 parcels in Columbia County. The decedent had had an underground gas storage lease and gas and oil leases with NW Natural since the 1970s and received rent and royalties for those leases.[2] In 1996, the decedent and his wife, Louise Adams, entered into a new agreement with NW Natural. In March 1997, petitioner Jeanne Wollman, the decedent's daughter, sought to be appointed as conservator for the decedent, for the reason that the decedent could not properly manage his affairs. Also in March 1997, Wollman obtained a power of attorney from the decedent. In June 1997, the court appointed Wollman as conservator.

In October 1997, without notifying the court and under her power of attorney for the decedent, Wollman signed a lease agreement with Enerfin Resources Northwest LP, a natural gas company (Enerfin), for other mineral rights of the decedent in exchange for rents and royalties. The lease agreement designated the decedent as a widower, although at the time he was married to Louise Adams. On May 26, 1998, in her capacity as conservator, and again without notifying the court or anyone else, Wollman transferred all of the decedent's mineral rights to herself and her two brothers, petitioners Glen and Archie Adams, for consideration of $10 in total.[3]

---

[2] At the time of the original leases, the decedent was married to his first wife, who died in 1983. In 1985, the decedent married Louise Adams, who died in July 2007.

[3] Throughout the remainder of this opinion, we describe Wollman and her brothers collectively as "petitioners."

On October 1, 1998, Wollman applied for Medicaid for the decedent, and the decedent began receiving Medicaid benefits in November 1998.[4] In February 1999, after the decedent had been approved for Medicaid, Wollman requested that the court close the conservatorship. Wollman's final accounting did not make mention of the transfer of the mineral rights. The court closed the conservatorship in March 1999. At the time of the decedent's death in January 2000, the decedent had accumulated $40,000 in Medicaid debt.

In 1999, petitioners had been negotiating with NW Natural concerning the lease but could not come to an agreement as long as Louise Adams remained on the lease. When it learned of the decedent's death, NW Natural inquired whether the decedent had a will. Wollman informed NW Natural that the decedent had died intestate and that she and her brothers owned the decedent's mineral rights. NW Natural subsequently learned from Van Horn that the decedent had not died intestate, that Louise Adams was his surviving spouse, and that a will had been executed in 1988. Under that will, after certain specific bequests, the beneficiaries were Louise Adams, the decedent's grandchildren, and Louise Adams's children. The will created a trust for Louise Adams, and the trust set out the powers and duties of the trustee, West Coast Trust. Petitioners were not beneficiaries under the 1988 will.

After the decedent's death, petitioners entered into an additional lease with Enerfin and signed two mineral leases with Cascade Resources Corp. (Cascade) for the same land that the decedent and Louise Adams had leased to NW Natural. Wollman testified that she believed that she could re-lease the mineral rights to Cascade because, at the time the decedent and Louise Adams had leased those rights

---

[4] Wollman testified that at the time she transferred the decedent's mineral rights to herself and her brothers, she believed that they had little value, and that she reported this to the State of Oregon when making application for Medicaid for the decedent. Wollman testified that she conveyed the mineral rights to petitioners not to short change the State of Oregon but because she understood it to be her father's wish, as a part of his testamentary plan, that the mineral rights be transferred to his children outside of a will or probate. In December 2004, petitioners satisfied the estate's $40,000 obligation to the State of Oregon.

to NW Natural in 1996, the decedent was incompetent, and the NW Natural lease was therefore invalid. Wollman testified that petitioners chose for that reason not to recognize the NW Natural lease.

In November 2003, NW Natural filed a petition to probate the 1988 will. *See* ORS 113.035.[5] NW Natural alleged in its petition that it was an interested party because

> "it believes it owes royalty and rental payments to the Decedent's Estate under certain leases with the Decedent. NW Natural has deposited approximately $3,604.51 of such rental payment under Oil and Gas storage leases in an interest bearing account * * * some or all of which sum NW Natural believes belongs to the Decedent's Estate. In addition, NW Natural has written royalty checks payable to Archie and Louise F. Adams, as well as the three children of Archie Adams, since January 2001 which total the sum of $14,938.15, all of which remains uncashed to date. NW Natural is informed and believes that Jeanne Wollman holds all of these uncashed checks and accordingly NW Natural requested on October 13, 2003 a stop payment by its bank and is in the process of depositing these funds for the potential benefit of the Decedent's Estate. The amount of $697.55, a sum accumulated from several uncashed royalty checks from 1997 and 1998, was sent to the State of Oregon and are also funds that NW Natural believes belong to Decedent's Estate."

NW Natural also alleged in the petition that it was interested in acquiring or leasing additional mineral rights from the decedent's estate. NW Natural requested the appointment of West Coast Trust as personal representative. *See* ORS 113.035.

The court entered a limited judgment appointing West Coast Trust as personal representative. After the opening of the estate, NW Natural released to the personal representative the rent and royalty payments that it had been accumulating for the benefit of the legal owner of the mineral rights. Thereafter, NW Natural's

---

[5] ORS 113.035 provides, in part:

"Any interested person or executor named in the will may petition for the appointment of a personal representative and for the probate of a will."

participation in the probate proceeding was sporadic, relating to its interests as a creditor of the estate,[6] to its participation in an auction for the public sale of the estate's mineral interests, and to responding to petitioners' discovery requests.

We pause in our description of the procedural facts to provide some further context. The issues presented on appeal have as their source petitioners' contention that, in breach of the personal representative's fiduciary duty, the personal representative allowed the probate proceeding to be orchestrated and funded by and colluded with NW Natural so that NW Natural could acquire the mineral assets and defeat petitioners' rightful inheritance through a commercially unreasonable sale of those assets. As evidence that NW Natural colluded with the personal representative and orchestrated the probate, petitioners point to the evidence that NW Natural filed the probate petition, nominated the personal representative, agreed to pay the personal representative, and also "funded" Louise Adams's challenge to petitioners' acquisition of the mineral rights, creating the need for the sale of those rights. Petitioners point out that NW Natural also fought off discovery that petitioners contended would show NW Natural's collusion with the personal representative to unjustly enrich NW Natural to the detriment of the heirs, and that the personal representative resisted petitioners' unjust enrichment claim against NW Natural. For their part, NW Natural and the personal representative deny that the evidence cited by petitioners shows either that there has been collusion between them, that they have manipulated matters to the disadvantage of the heirs of the estate, or that the probate and sale of the mineral rights were conducted other than reasonably.

In light of the parties' conflicting interpretations of the record, we make these additional findings: At the time of the filing of the petition by NW Natural, the estate had no assets. West Coast Trust, an independent fiduciary, agreed to act as personal representative and to attempt to recover assets of the estate upon agreement by NW Natural to

---

[6] NW Natural became a creditor of the estate by virtue of it having advanced funds to Van Horn to obtain legal representation for Louise Adams.

cover West Coast Trust's costs up to $20,000 if West Coast Trust was unable to recover fees and costs from the estate.[7] Ultimately, however, as will be explained, West Coast Trust recovered assets of the estate to cover West Coast Trust's costs, as well as to pay the estate's creditors, and NW Natural did not pay any money to West Coast Trust.

In March 2004, West Coast Trust filed a petition in the probate court to set aside the 1998 conveyance of the decedent's mineral rights to petitioners. *See* ORS 114.305.[8] West Coast Trust also sought an accounting and restitution. Wollman objected and testified at a hearing regarding ownership of the mineral rights that the decedent had always intended that the mineral rights would pass to petitioners outside of the will and the estate, and that, in conveying the mineral rights to herself and her brothers, Wollman had followed the decedent's wishes.

---

[7] In a letter to NW Natural's legal counsel, West Coast Trust's Vice President and Manager of Private Client Services wrote:

"West Coast Trust Company, Inc., is willing to serve as the court-appointed Personal Representative for the Estate of Archie Q. Adams, deceased. The purpose of this appointment is to identify assets held by the decedent and distribute them according to the terms of the Will. The probate proceeding could be a simple procedure or a complex one, depending on the validity of previously signed documents.

"If the Trust Company serves as Personal Representative, our fees would include, but not be limited to, an hourly amount of $150 and the payment of all costs associated with engaging legal counsel to assist us with probate proceedings. Since the extent of time involved in the Estate is unknown, the Trust Company would expect your client to cover the Personal Representative's costs up to $20,000. The Trust Company would submit billing statements for reimbursement based on a procedure developed with your client."

NW Natural's counsel agreed to the arrangement proposed by West Coast Trust. Its counsel also advised West Coast Trust that,

"[a]lthough NW Natural is willing to ensure that at least some of your costs and fees are covered regardless of the ability of the Estate to pay, it is understood that neither you nor your legal counsel will be representing NW Natural in these proceedings or acting in any way other than in the best interests of the Estate."

[8] Under ORS 114.305(9), the personal representative is authorized to "[p]rosecute or defend actions, claims or proceedings in any jurisdiction for the protection of the estate[.]" *See also* ORS 114.425 (describing probate court's authority to order the appearance of a person who has "concealed, secreted or disposed of any property of the estate of a decedent[.]"; ORS 114.435 (describing power of the personal representative to avoid transfers made with intent to defraud the creditors of the decedent).

In the meantime, Wollman, who had initially told NW Natural that the decedent had died intestate, produced a second will, allegedly executed by the decedent in 1992 and leaving all of his assets to petitioners. That 1992 will was also filed with the probate court.

After a hearing regarding the ownership of the mineral rights, the probate court found on March 22, 2005, that Wollman was not credible, that she had acted without authority in transferring mineral rights to petitioners for nominal consideration of $10, and that in doing so she had breached her fiduciary duty to the decedent and the court.[9] The court further found that Wollman's transfer of mineral interests to petitioners "ended a stream of income to her father and served to impoverish" him, causing him to incur over $40,000 in Medicaid debt. In an order of June 2005, the court determined that the 1998 deed transferring mineral rights to petitioners would be set aside as void and that petitioners must fully account for and repay to the probate estate all funds received as a result of the 1998 conveyance and the mineral lease agreements.

Petitioners did not appeal that ruling. They transferred the mineral rights to the probate estate and filed an accounting showing that, between November 30, 1999 and January 8, 2004, petitioners had received mineral lease payments of approximately $200,000. Thereafter, as trustee and personal representative of the decedent's estate, West Coast Trust held the mineral rights and petitioners' obligation to the estate to repay the lease payments as the only assets of the probate estate.

In January 2006, the probate court considered the validity of the 1992 will and found that it had superseded the 1988 will. The court held a hearing to determine Louise Adams's elective share of the estate, *former* ORS 114.135 (1999),[10] to provide instructions to the personal

---

[9] In a letter opinion dated March 22, 2005, the court expressly found "not credible" Wollman's testimony that "she did not know the mineral lease rights had a significantly greater value than the amount paid [$10][.]"

[10] When the decedent died in 2000, *former* ORS 114.135(1999) granted the court discretion to determine the reasonable and proper value of the elective share. In making that determination, the court shall consider the length of the marriage and whether the marriage was a first or subsequent marriage for the parties.

representative regarding the sale of mineral rights, and to close the estate. The court ordered that Louise Adams receive an elective share of 20 percent of the estate and that petitioners receive the remaining 80 percent. However, the court declined to authorize a sale of the mineral rights at that time, concluding that the record did not contain sufficient information to determine the value of the mineral rights. The court denied petitioners' request to reopen the conservatorship and to approve a distribution of the mineral rights to petitioners outside of the probate estate.

In June 2007, the probate court held a status conference on the record, at which time the parties, including petitioners, agreed that a liquidation of the mineral rights was necessary in order to satisfy the estate's creditors and to pay Louise Adams her elective share. In August 2007, the personal representative wrote to the represented parties, including petitioners, proposing a plan to auction the mineral rights through a professional auctioneer, Realty Marketing/Northwest (Realty Marketing).

On October 24, 2007, Wollman protested the procedure for auctioning the mineral rights, objecting to the personal representative's decision that the estate's beneficiaries would not be able to bid their anticipated distributions from the estate, but would instead be required, like all third-party bidders, to bid cash. Wollman subsequently withdrew her objection to the sale. The auction took place as scheduled on November 3, 2007, and the probate court approved the auction on November 28, 2007.

Underlying petitioners' June 25, 2009 objection to the final accounting is a contention regarding what the record shows concerning the mineral assets offered for sale and the assets that petitioners contend NW Natural actually purchased at the auction, verses the description in the deed executed by the personal representative. In their opening brief, petitioners contend in their first assignment of error that there is evidence in the record that shows that the auction materials referenced a sale of the mineral rights in Parcels 1 to 23, but not the assignment of leases on Parcels 24 to 27. However, they contend, the deed executed by the personal representative mistakenly included a conveyance of

title to the mineral rights to Parcels 24 to 27, and the estate received no additional consideration from NW Natural for that fundamental change in what the probate court had ordered sold, depriving the heirs of significant value.

The personal representative and NW Natural respond that the legal descriptions of the mineral rights in Parcels 24 to 27 have been a part of the sale from the beginning. They note that the property description in Wollman's 1998 deed from the decedent to petitioners included "[a]ll other mineral reservations held or reserved in the name of Archie Q. Adams *** in Columbia County, Oregon." Additionally, they point out that the auction marketing information noted that six leases were to be assigned to the new owner and included descriptions included in the deed as Parcels 24 to 27. Further, the personal representative responds that the personal representative conveyed a bargain and sale deed of all mineral rights held by the estate, and the probate court found that the personal representative intended and all of the parties knew that the personal representative intended to and did auction off all of the mineral interests held by the estate including Parcels 24 to 27.

The probate court found "that all of the mineral rights owned in Columbia County by the Estate of Archie Adams have been appropriately auctioned[.]" We make these additional findings: All of the estate's mineral rights in Columbia County, including the mineral rights to Parcels 24 to 27, were offered for sale. Seven bidders registered for the auction and paid the required deposit of $30,000, including petitioner Archie Adams, Jr. All qualified bidders received an auction packet, which was distributed in advance of the auction, and which listed the mineral rights to be auctioned on Parcels 1 to 27, including the mineral leases to which those rights were subject, and including the mineral rights. The auction took place on November 3, 2007. NW Natural was the successful bidder, with a bid of $375,000. Realty Marketing issued an opinion stating that the "mineral interests obtained 'fair market value' within the structure of a public competitive auction."

The personal representative filed a motion for court approval of the sale and sought an order that the auction was

"a commercially reasonable sale of the assets of the estate."
No objections were filed and, on November 28, 2007, the
court approved the sale and entered an order authorizing
a transfer of all auctioned mineral rights to NW Natural.[11]
The personal representative executed a bargain and sale
deed that specifically described all of the parcels at issue,
including mineral rights in Parcels 24 to 27, using the same
property descriptions that had been included in the leases to
Enerfin and Cascade Resources executed by petitioners and
that had been included in the third annual accounting filed
by the personal representative and approved by the court on
March 25, 2008, without objection by petitioners.

The personal representative filed a final account-
ing on June 5, 2008. Wollman filed an objection on June 27,
2008. There ensued lengthy wrangling on discovery requests
by petitioners for appraisals of the property sold and commu-
nications between NW Natural and the personal represen-
tative concerning the estate. On January 21, 2009, the per-
sonal representative filed an amended final accounting. The
attorneys representing petitioners withdrew from the case.

On March 18, 2009, Wollman filed a *pro se* motion
with the court requesting an extension of time to file her
objections to the amended final accounting. No party
objected, and the court allowed an extension to Wollman to
file her objections to the amended final accounting. The court
gave Wollman until May 26, 2009, to file her objections to
the amended final accounting. On May 20, 2009, Wollman
filed an objection *pro se*, in which she asserted that the per-
sonal representative's letters testamentary had lapsed and
that the auction process was defective. She requested that
the court delay approval of the final accounting until after
further discovery. The other petitioners did not join in her
*pro se* objection or file separate objections.

On June 25, 2009, the court held a hearing on
Wollman's *pro se* objection to the final accounting. At that
time, the court became aware that Mr. Sims, petitioners'

---

[11] The court's order stated:

"Upon being fully informed, the court hereby finds that all of the mineral
rights owned in Columbia County by the Estate of Archie Adams have been
appropriately auctioned and the sale price of $375,000 is hereby approved."

newly retained attorney, had filed a new objection to the final accounting. In their "Objection to Personal Representative's Petition and Petition for Surcharge of Personal Representative and Claim for Unjust Enrichment," petitioners asserted that the mineral rights (which petitioners had previously purchased from the decedent for $10.00) were reasonably worth $215,948,115.60, and that, in selling them to NW Natural for only $375,000, the personal representative had negligently or willfully breached its fiduciary duty to the estate.[12]

The personal representative moved to strike the June 25 objection on the grounds that it was untimely and that it was precluded by the court's November 28, 2007, order approving the sale of the mineral rights. The personal representative's counsel reminded the court that in 2007, Wollman had withdrawn her objection to an order approving the sale of the mineral rights, and further contended that the court's order approving the sale precluded petitioners' renewed challenge.

Petitioners countered that NW Natural had not yet provided full discovery as ordered by the court and that further discovery would show that, unbeknownst to Wollman at the time she withdrew her objection to the sale, "the gas company has been playing puppet master with the personal representative in this estate to the detriment of the beneficiaries[.]"

The court allowed a hearing on petitioners' objection to address petitioners' allegations of wrongdoing by the personal representative and NW Natural. NW Natural's legal counsel advised the parties that it did not intend to appear at subsequent hearings, because "discovery is complete from our point of view. We've provided full access, provided documents to prior counsel[.]" For that reason, NW Natural's counsel explained, "I don't need to be here at any of these

---

[12] Petitioners alleged that (1) the sale was not necessary to administration of the estate; (2) the sale was not conducted in a manner reasonably calculated to obtain fair value; (3) the personal representative had failed to disclose to petitioners that "higher offers than the auction price had already been offered, or that [NW Natural], which, as predicted by petitioners, was the only bidder at the auction, had privately agreed to compensate the Personal Representative up to $20,000 beyond the fees and costs allowed by the court under ORS 116.173."

proceedings * * * I don't expect to be a participant in any of these proceedings." Petitioners' counsel responded that petitioners had "filed * * * an alternative claim against the gas company, so you might want to be here." Counsel for NW Natural replied that, "if you'd like to file a lawsuit against the gas company, I think there's a way to do that, but I don't believe that you'd file a lawsuit against a non-party, non-participant in the guise of a probate proceeding." Discussion continued about whether NW Natural had appeared or intervened as a party to the probate proceeding and whether petitioners' unjust enrichment claim would be heard within the probate proceeding.

The court held further hearings on July 16 and 22, 2009. As promised, NW Natural did not appear or respond to petitioners' allegations. The personal representative moved to strike petitioners' most recent objections as untimely, and also asserted that, if the order approving the sale of mineral rights is valid, "there can be no claim * * * against [NW Natural]." Petitioners responded that, irrespective of the timeliness of petitioners' objections to the final accounting, the claims against NW Natural survive, because NW Natural is a party to the probate proceeding, and the probate court therefore has jurisdiction to consider petitioners' separate claim against NW Natural.

In a letter opinion of September 15, 2009, the court rejected petitioners' June 25, 2009, objections to the final accounting as untimely, reasoning that those objections had not been filed by the May 26, 2009, deadline fixed by the court, as required by ORS 116.103. The probate court also rejected petitioners' petition to surcharge the personal representative as not supported by the record. The court was not persuaded by petitioners' argument that the personal representative had exceeded its authority by transferring a fee title in the mineral rights to Parcels 24 to 27, finding that "[t]he documents, when read as a whole, are clear that the fee simple title would be sold at auction. Further, the exhibits show that all parties knew that all mineral rights would be sold."

The court found:

"The exhibits support that all parties knew exactly what was to be sold at the auction, and the mineral rights to all

parcels were sold. The opportunity to contest the auction was at the November 1, 2007, hearing or after the filing of the motion for the approved sale by West Coast Trust. The first objection was filed June 27, 2008, seven months after the sale was finalized by the court on November 28, 2007. The sale only becomes void if there can be a claim established for negligence or breach of fiduciary duty. I have heard many such allegations and have waited for evidence to actually support the allegations and suspicions, but no evidence of 'negligence or of a willful act or nonfeasance in the administration of the estate' by the Personal Representative has been shown. ORS 116.063(g). I find that the doctrine of [the law of] the case applies, and I find that the sale of the mineral rights was decided when the Order approving the sale was entered on November 28, 2007."

The court reasoned, further, that "Petitioners' contention concerning the finality of the sale has been resolved when this Court signed the order of the sale of mineral rights of November 28, 2007," and concluded further that "the law of the case" prevented relitigation of that matter. Finally, the court ordered that the personal representative was entitled to a fee of $24,661.85 for its services, including an extraordinary fee of $11,250.

In an order of November 17, 2009, which incorporated its letter opinion, the court granted the personal representative's motion to strike petitioners' objections to the final accounting, as well as its "Petition for Surcharge of Personal Representative and Claim for Unjust Enrichment."

On February 2, 2010, petitioners submitted a letter "offer of proof" to the probate court itemizing their assertions in support of a claim that the personal representative had breached its duty to the estate, resulting in monetary loss.[13] On March 1, 2010, the probate court entered a general judgment approving the amended final accounting.

Petitioners filed a notice of appeal naming as respondents West Coast Trust, NW Natural, and Van Horn, now as personal representative of the estate of Louise Adams. In their first of four assignments of error, petitioners contend

---

[13] The parties stipulated that petitioners' offer of proof could be made by letter, as opposed to orally before the court.

for several reasons that the probate court erred in rejecting their objections to the final accounting. Petitioners first assert that the probate court erred in concluding that the objections were untimely. As noted, on March 18, 2009, Wollman requested an extension of time from the court to file her objections to the personal representative's January 21, 2009, amended final accounting, so that she could find new counsel. The court gave her until May 26, 2009, to file her objections. On May 20, 2009, Wollman filed objections *pro se*. The court rejected each of the objections made *pro se*, and those rulings are not challenged on appeal. Also as noted, however, on June 25, 2009, the date set for hearing on Wollman's *pro se* objections, petitioners' new counsel appeared and filed new objections, which the court rejected as untimely. Petitioners continue to assert that those objections were timely under ORS 111.235.

The probate court was correct in rejecting the June 25 objections as untimely. It is true, as petitioners contend, that ORS 111.205 to 111.275 describe probate procedures generally, and that ORS 111.235 provides that "[a]ny interested person, on or before the date set for a hearing, may file written objections to a petition previously filed." But other provisions, ORS 116.063 to 116.263, relate specifically to final accountings. Under ORS 116.093, the personal representative "shall fix a time for filing objections [to the final accounting] in a notice thereof." Under ORS 116.103, any person entitled to notice under ORS 116.093 of the time for filing objections to the final accounting "may, within the time fixed for the filing, file in the estate proceedings objections to the final account and petition for distribution."

Thus, in the context of a final accounting, the personal representative fixes the time for filing objections to the final accounting and notifies interested persons of that time. Under ORS 116.113, objections may be filed within that time. If, as contended by petitioners, a party could also file objections on the date of the hearing set to consider objections, then both the duty to fix the time for filing objections under ORS 116.093 and the right under ORS 116.103 to file objections "within the time fixed for the filing," would be superfluous. We conclude, therefore, that in the context of a final accounting, the time limit set pursuant to ORS

116.093 and provided in ORS 116.103 controls. Petitioners had until May 26, 2009, the date set by the court, to file their objections to the amended final accounting. The court did consider the objection to the final accounting that was filed within the time provided in the court's prior order. The court did not abuse its discretion in disallowing petitioners' untimely June 25, 2009, objections to the final accounting.

Petitioners further contend in their first assignment of error that the probate court erred in striking their petition to either surcharge the personal representative for breach of fiduciary duty or to require that NW Natural pay the estate $215,573,115.60, representing the value of the mining interest by which NW Natural was allegedly unjustly enriched.

As the probate court explained in its September 15, 2009 letter opinion, underlying both of petitioners' assertions is a claim that the personal representative breached its duty to the estate by allowing the sale of the mineral rights to go forward at all or to go forward in a commercially unreasonable fashion. That sale had been approved by the probate court in an order of November 28, 2007, as "a commercially reasonable sale of the assets of the estate." The court based its rejection of petitioners' petition, in part, on the law of the case doctrine, reasoning that "the sale of the mineral rights was decided when the Order approving the sale was entered on November 28, 2007."

We need not consider whether, as petitioners contend, the probate court's reliance on the law of the case doctrine was incorrect. The probate court also expressly found that there was "no evidence of 'negligence or of a willful act or nonfeasance in the administration of the estate' by the Personal Representative[.]" We have reviewed *de novo* the record designated on appeal, and we agree with the trial court's findings. We further find on this record that there is no evidence that the sale of the mineral rights was commercially unreasonable, and that there is no evidence of negligent or willful misconduct on the part of the personal representative in conducting the sale. We conclude for those reasons that the probate court did not abuse its discretion in declining to reconsider its November 28, 2007, order approving the sale of the mineral rights. That conclusion

also disposes of petitioners' second assignment of error, in which they contend that the probate court erred in not setting aside the sale.[14]

We continue with the third assignment, which challenges the probate court's ruling that NW Natural is not a party to the probate proceeding. As background, we note that, after the filing of the notice of appeal, NW Natural moved to dismiss the appeal as to itself, contending that it was not a party to the probate proceeding below, had not been properly served with petitioners' petition alleging unjust enrichment, and, therefore, is not a respondent on appeal. NW Natural also pointed out that on February 6, 2006, in response to a motion by petitioners to compel discovery, the probate court had expressly ordered that "Northwest Natural Gas is not a party to this action," and that "Northwest Natural Gas will not be permitted to act as a party."

The Appellate Commissioner denied NW Natural's motion to dismiss with leave to renew, explaining that a complete review of the record was necessary. NW Natural has renewed its motion, contending that, although it initiated the probate proceeding by filing a petition as an interested party and designated itself as "petitioner," it is not a party to the probate proceedings.

Dovetailing NW Natural's motion to dismiss is petitioners' third assignment of error, in which petitioners contend that the probate court erred in determining on February 6, 2006, that NW Natural was not a party to the probate. NW Natural asserts that this assignment is not preserved, and responds in the alternative that, consistent with its motion to dismiss the appeal, it was not a party to the probate proceeding and is not a proper respondent.

As we have noted, petitioners' first and second assignments depend on the assertion that the personal representative breached its duty to the estate by allowing the sale of the mineral rights to go forward. In our *de novo* review of the record designated on appeal, we have rejected

---

[14] We also reject petitioners' assertion that the order approving the sale should be set aside because the personal representative did not provide sufficient notice of the order to petitioners. The record reflects that the notice was sufficient.

that assertion. Underlying this third assignment of error is the contention that NW Natural should be required in this probate proceeding to answer petitioners' contention that NW Natural was unjustly enriched by a commercially unreasonable sale of the mineral rights. In view of our finding, above, that the evidence does not support a finding that the sale of the mineral rights was commercially unreasonable, and our conclusion on the first assignment of error that the probate court did not err in striking petitioners' petition seeking damages from NW Natural based on unjust enrichment, whether NW Natural was a party to the probate proceeding is of no consequence. We conclude, therefore, that this third assignment is moot. Accordingly, we also dismiss NW Natural's motion to dismiss as moot.

In their fourth assignment, petitioners contend that the probate court erred in awarding an extraordinary fee of $11,250 to the personal representative for services in connection with the sale of the estate's assets. The fee was in excess of that calculated under ORS 116.173(1). However, ORS 116.173(2) provides that,

"[i]n all cases, further compensation as is just and reasonable may be allowed by the court for any extraordinary and unusual services not ordinarily required of a personal representative in the performance of duties as personal representative."

The personal representative provided an explanation of why it was entitled to an extraordinary fee. In view of the complexity and duration of this probate proceeding, the probate court did not abuse its discretion in allowing an extraordinary fee to the personal representative.

Respondent Northwest Natural Gas Company's motion to dismiss dismissed as moot; affirmed.